## SAMUEL J. VEAL *v.* WARDEN, STATE PRISON (10485)

O'CONNELL, FOTI and LAVERY, Js.

Argued April 6—decision released August 4, 1992

*Denise Ansell,* special public defender, for the appellant (petitioner).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Dennis O'Connor,* senior assistant state's attorney, for the appellee (respondent).

LAVERY, J. The principal issue in this habeas corpus appeal is whether the habeas court properly found that the petitioner, Samuel J. Veal, was afforded effective assistance of counsel as guaranteed by the United States and Connecticut constitutions. A jury found the petitioner guilty of murder in violation of General Statutes § 53a-54a,[1] and the trial court imposed a sentence of sixty years. The petitioner appealed to the Supreme Court which upheld the conviction in *State* v. *Veal,* 201 Conn. 368, 517 A.2d 615 (1986).

The petitioner then brought a petition for a writ of habeas corpus in the Superior Court, claiming that he had been deprived of his constitutional right to effective assistance of counsel as guaranteed by the United States and Connecticut constitutions. In the habeas court, the petitioner claimed that he had received ineffective assistance of counsel because his trial coun-

---

[1] General Statutes § 53a-54a provides: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress, or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

sel (1) had failed to raise and present an affirmative defense of extreme emotional disturbance when adequate pretrial investigation by counsel would have disclosed that this was the only viable defense available, (2) had presented a "defense of apologia" as the sole defense, and (3) had failed to object on hearsay grounds concerning threats made by the petitioner against the victim.

The following findings of fact were among those made by the habeas court in its memorandum of decision: (1) the petitioner had failed to make the required showing of either deficient performance or sufficient prejudice; (2) the petitioner had a fair trial and had not sustained his burden of proving ineffective assistance of counsel under the United States or Connecticut constitutions; and (3) the petitioner made no showing that the justice of his trial was rendered unreliable by a breakdown in the adversarial process caused by deficiencies in counsel's assistance. The habeas court dismissed the petition, and the petitioner, upon the granting of certification, appealed to this court.

On appeal, the petitioner claims that the habeas court failed to recognize trial counsel's deficient performance and the resulting prejudice to the petitioner's defense because (1) the trial counsel failed to object properly on the grounds of hearsay to the admission of the statements of three witnesses, (2) the trial court improperly concluded that trial counsel had conducted an adequate investigation into the petitioner's defense of extreme emotional disturbance, (3) the court improperly concluded that the failure to advance the affirmative defense of extreme emotional disturbance was a strategic or tactical decision, (4) the court failed to find that the petitioner overcame the presumption that the challenged actions of trial counsel were sound trial strategy, and (5) the court did not find trial counsel's performance

to be deficient and that such deficiency prejudiced the petitioner. We affirm the judgment of the habeas court.

The facts relevant to the petitioner's murder conviction can be summarized as follows. "During the evening of July 30, 1983, a number of people were sociably playing cards at a private home in Hartford. When additional visitors arrived around 11 p.m., the card game broke up and four of the visitors, the [petitioner], another man and two women, then left the house. As they were walking away from the house, the [petitioner], without visible provocation, fired a shot at one of the women, who had formerly been his girlfriend. After the victim fell to the ground, the [petitioner] fired additional shots at her at close range. The victim died at St. Francis Hospital without ever having regained consciousness. In firing at the victim, the [petitioner] also hit the other woman, who suffered a bullet wound in her arm. The [petitioner] fled from the scene of the crime but was apprehended later that evening by the Hartford police." *State* v. *Veal,* supra, 370.

We first address our scope of review. In a habeas corpus appeal, this court may not disturb underlying historical facts found by the habeas court unless they are clearly erroneous. *Phillips* v. *Warden,* 220 Conn. 112, 131, 595 A.2d 1356 (1991). When determining whether those facts constitute a violation of the petitioner's right to effective assistance of counsel, however, this court is not bound by such a limited standard of review, because such a determination is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case. Id.

The sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution guarantee the right to effective

assistance of counsel. *Quintana* v. *Warden,* 220 Conn. 1, 4, 593 A.2d 964 (1991); *Levine* v. *Manson,* 195 Conn. 636, 649, 490 A.2d 82 (1985).[2]

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense. . . . Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. *Strickland* v. *Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, reh. denied, 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984) . . . .

"Establishing that counsel's performance was deficient requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. . . . To demonstrate this the defendant must show that counsel's representation fell below an objective standard of reasonableness. . . . In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . Judicial scrutiny of counsel's performance must be highly deferential, and courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citations omitted; internal quo-

---

[2] Because the Connecticut constitutional issue has not been separately briefed, however, we decline to address it. *State* v. *Rosado,* 218 Conn. 239, 251 n.12, 588 A.2d 1066 (1991).

tation marks omitted.) *Fair* v. *Warden,* 211 Conn. 398, 402–404, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 108 L. Ed. 2d 514 (1989); *Williams* v. *Warden,* 217 Conn. 419, 422–23, 586 A.2d 582 (1991).

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (Citations omitted; internal quotation marks omitted.) *Fair* v. *Warden,* supra, 411.

"It is axiomatic that '[t]he petitioner, as the plaintiff in a habeas corpus proceeding, bears a heavy burden of proof'; *Lubensky* v. *Bronson,* 213 Conn. 97, 110, 566 A.2d 688 (1989); see also *Hayes* v. *Maggio,* 699 F.2d 198 (5th Cir. 1983); and that the claimed error of law must constitute a 'fundamental defect which inherently results in a miscarriage of justice . . . .' *Hill* v. *United States,* 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962). Habeas corpus provides an extraordinary legal remedy for illegal detention; *McClain* v. *Robinson,* 189 Conn. 663, 668, 457 A.2d 1072 (1983); and should be available to those ' "whom society has grievously wronged." ' *Kuhlman* v. *Wilson,* 477 U.S. 436, 447, 106 S. Ct. 2616, 91 L. Ed. 2d 364 (1986). It is against these standards that we measure the petitioner's claims." *Ostolaza* v. *Warden,* 26 Conn. App. 758, 760, 603 A.2d 768, cert. denied, 222 Conn. 906 608 A.2d 692 (1992).

I

THE ADMISSION OF ALLEGED HEARSAY STATEMENTS

At trial, the state introduced statements the victim made to three individuals shortly before her death. The substance of these statements is as follows. First, Lil-

lian Newton testified that the day before the victim was murdered the victim told her that the petitioner had showed her a gun the previous night and that she was afraid of him. Newton further testified that the victim told her that the petitioner had threatened her. Second, Willie Mae Slayton testified that two days before the victim was murdered the victim had asked her not to leave "because Sammy is going to kill me." Finally, Vanessa Dunston, the victim's daughter, testified that approximately one week prior to the murder the victim told her, "I know Sammy has a gun and he's not afraid to use it." Dunston further testified that the victim told her that "she hoped that [the petitioner] don't shoot her in the head with it." Trial counsel objected to the admission of each of the statements on the basis of relevance and prejudice, expressly disavowing reliance on any hearsay theory. *State* v. *Veal,* supra, 376. The trial court overruled the objections, finding the testimony to be relevant, probative and not prejudicial.

After reviewing the evidence introduced by the state on the element of intent, the habeas court concluded that the petitioner was not prejudiced by the admission of the statements made by the victim to the three witnesses.

On this issue, the habeas court made the following findings of fact. "Three days before the murder, the petitioner told Willie Mae Slayton that he was going to kill 'that black bitch' [the victim]; on the night of the murder, the petitioner tried to pick a fight when he arrived at the card game; while playing cards, the petitioner kept reaching under the table, 'messing with his leg'; when asked what the problem was, he replied 'I just got something to do'; as the card game broke up and the parties left, the petitioner pulled something out of his sock, fired a shot, and the victim fell; the petitioner ran to the victim and when he reached her, he bent over her and kept firing the gun, saying, 'Bitch,

I finally got you. Bitch, I finally got you.' There was a total of seven different bullet tracks, three of which involved the brain, any one of which could have caused death by itself. When arrested a short time later, the petitioner told Detective [James] Pasquerell that he had shot the victim because 'he had just about had it with her.' "

The petitioner argues that he was prejudiced because the alleged hearsay statements not only substantiated the claim of intent to kill but essentially made the state's case. He claims that outside of Slayton's statement there was no other proof of intent without those statements, and that but for the admission of the statements the state would not have met its burden of proof on the element of intent. We disagree.

"Generally, intent can be proved only by circumstantial evidence. . . . Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide." *State* v. *Morrill,* 193 Conn. 602, 609, 478 A.2d 994 (1984); *State* v. *Grant,* 219 Conn. 596, 603, 594 A.2d 459 (1991). Indeed, "[t]he question of intent is purely a question of fact to be determined by the jury." *State* v. *Adams,* 14 Conn. App. 119, 124, 539 A.2d 1022 (1988).

The evidence of intent, absent the statements of Newton, Slayton and Dunston, was overwhelming. In addition to his statement to Slayton, the petitioner was observed instigating a fight with the victim on the night of the incident. He was observed shooting seven bullets into her head at close range while exclaiming, "Bitch, I finally got you. Bitch, I finally got you." After he was arrested, the petitioner told the police that he shot the victim because "he had just about had it with her." We agree with the habeas court that the evidence, both

direct and circumstantial, was overwhelming even without the statements at issue. The petitioner has not sustained his burden of proving the result of the trial would have been different if the three statements had been precluded, and thus the prejudice prong of *Strickland* has not been satisfied.

## II

### PRETRIAL INVESTIGATION OF EXTREME EMOTIONAL DISTURBANCE DEFENSE

The habeas court made the following findings of fact relating to counsel's investigation of the petitioner's potential emotional disturbance defense. "After the petitioner informed his trial attorney that he was interested in pursuing the defense of extreme emotional disturbance, trial counsel had the petitioner examined by Walter Borden, a forensic psychiatrist. Borden concluded that there was no clinical evidence to suggest either an insanity defense or an extreme emotional disturbance defense. Trial counsel then had the petitioner examined by another forensic psychiatrist, John Felber. Felber also concluded that there was no clinical basis for an extreme emotional disturbance defense. The investigation conducted by trial counsel and trial counsel's investigator included the contacting of witnesses who could testify regarding the relationship between the petitioner and the decedent."

The court also found that trial counsel was familiar with the relationship between the petitioner and the victim, and that trial counsel had hired two well known psychiatrists who separately found that the there was no clinical basis to support the defense of extreme emotional disturbance. The court concluded that the experienced trial counsel's decision not to go forward on an extreme emotional disturbance defense without the benefit of an expert witness was sound trial strategy. This conclusion was based on the trial counsel's reason-

ing that the state could put on psychiatric experts who could testify not only as to the lack of extreme emotional disturbance but also as to their opinions of the petitioner's mental state or condition pursuant to General Statutes § 54-86 (i).

We conclude that the habeas court's findings and conclusions were proper. As in *Fair* v. *Warden,* supra, the petitioner has failed to demonstrate the deficiency of trial counsel's performance under the first prong of *Strickland.*

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. [*Strickland* v. *Washington,* supra], 688. Judicial scrutiny of counsel's performance must be highly deferential and courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id., 689 . . . ." (Citations omitted; internal quotation marks omitted.) *Fair* v. *Warden,* supra, 403–404.

In the present case, trial counsel thoroughly investigated the defense of extreme emotional disturbance, consulting two well qualified psychiatrists. We agree with the habeas court that "[b]ecause of the calculated, logical progression that trial counsel went through in analyzing the problem of whether to pursue an extreme emotional disturbance defense, the petitioner has failed to overcome the strong presumption that the action of not pursuing the defense was sound trial strategy." We conclude that the petitioner did not sustain his burden of proof that trial counsel's performance fell below the *Strickland* standard.

The petitioner's remaining claims are subsumed into the extreme emotional disturbance defense claim. As in *Fair* v. *Warden,* supra, 405–407, trial counsel advised the petitioner to accept a plea bargain but the petitioner refused. Counsel then pursued a strategy of attempting to explain the petitioner's conduct and to raise a reasonable doubt on the element of intent. In *Fair,* the petitioner's entire case at trial consisted of a plea for juror sympathy. Id., 406. Our Supreme Court observed that "[e]ven if trial counsel's actions amounted only to a plea for juror sympathy or for a lenient sentence, such a tactical choice has been held not to amount, per se, to ineffective assistance of counsel." Id., 407. In this case, trial counsel actively sought to negate the element of intent. Our review of the record reveals that trial counsel's performance was more than merely competent.

The judgment is affirmed.

In this opinion the other judges concurred.