[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Petitioner contends that his appellate counsel, Alexander Schwartz, rendered constitutionally ineffective assistance by failing to brief various claims of insufficient evidence.
The habeas corpus petition before this court arises from petitioner's conviction following a jury trial (Hartmere, J. presiding), of attempted murder in violation of General Statutes §§ 53a-49, 53a-54a; attempted larceny in the second degree in violation of General Statutes §§ 53a-49, 53a-119, 53a-123; CT Page 4612 attempted larceny in the third degree in violation of General Statutes §§ 53a-49, 53a-119, 53a-124; carrying a pistol without a permit in violation of General Statutes § 29-35
(a); assault in the first degree in violation of General Statutes § 53a-59 (a)(5); and conspiracy to commit larceny in the second degree in violation of General Statutes §§ 53a-48, 53a-123
(a)(2). On November 1, 1996, the court sentenced the defendant to a total effective sentence of forty years. T7 at 12.
At petitioner's trial, the jury reasonably could have found the following facts.[1]
On December 14, 1995, the victim, James Grosner, was at the home of his fiancee's parents, which is located on Graham Street in Stratford. At approximately 2:30 a.m., the victim heard a noise, and an alarm sounded almost immediately thereafter. The alarm belonged to a truck that was parked in the driveway. The victim looked out of a window and saw two men running away.
The victim exited the home and pursued the two individuals. When the victim reached the corner of Graham Street and High Park Avenue, he saw the two men enter a parked automobile. After several unsuccessful efforts to start the automobile, a man, later identified as the defendant, exited the car and took several steps toward the victim. The defendant raised his arm, and the victim saw a flash and heard a gunshot. The victim was struck in the leg by a bullet and retreated to the house while the defendant fired four additional shots.
The victim informed a police dispatcher that the perpetrators were driving a small, greenish Tercel on High Park Avenue. Officer David McNeil of the Stratford police department was on patrol in the vicinity of High Park Avenue when a police dispatcher reported the incident. At the intersection of Stratford Avenue and Bruce Avenue, approximately four blocks from the location of the shooting, McNeil observed a small, grey Toyota with three occupants. McNeil testified that he did not observe any other vehicles on the road from the time he received the dispatch until he observed the Toyota. McNeil activated his cruiser's strobe lights and attempted to pull over the Toyota because it matched the description of the vehicle involved, was the only vehicle in the area, was coming from the direction of the shooting and had several occupants. When McNeil activated his cruiser's strobe lights, the Toyota accelerated and a chase ensued. CT Page 4613
When the Toyota struck a median on Washington Avenue in Bridgeport, the three occupants abandoned the vehicle. Officer Charles Johnson of the Bridgeport police department apprehended the defendant. Stratford police officers then arrested the defendant and took him into custody. The defendant was later identified as the owner of the Toyota.
Officer John Steedley transported the defendant to the Stratford police station. When they arrived at the police station, Steedley gave the defendant a form that listed hisMiranda rights. Steedley asked the defendant to review the waiver form, which the defendant reviewed and signed. Before Detectives Richard Yeomans and Nelson Dinihanian[2] interviewed the defendant, Dinihanian read the defendant his Miranda rights. Dinihanian asked the defendant whether he understood his rights and was willing to waive them, and the defendant indicated that he was willing to speak with the detectives. During his interview with the detectives, the defendant made several incriminating statements.
Dinihanian also read a "consent to search" form to the defendant and asked him if he would authorize police officers to search his vehicle. The defendant reviewed the form and signed it. During a search of the defendant's vehicle, police officers discovered a flashlight, a dent puller and a screwdriver. At trial, Detective Robert Yakoubian testified that automobile thieves often use a dent puller to remove a vehicle's ignition so that the vehicle can be started with a screwdriver.
Shortly after the defendant arrived at the Stratford police station, Sergeant Christopher Marino removed a hooded sweatshirt and a pair of baggy pants from the defendant. Marino then placed these items on a hook outside the defendant's cell. While the defendant was in the holding cell, Officer Patrick Freer, who was with the victim at the hospital, spoke with Marino. Freer informed Marino that the victim described the shooter as wearing baggy pants and a hooded sweatshirt. Realizing that the defendant's sweatshirt and pants matched the description provided by the victim, Marino seized these items from the hook outside the defendanfs cell. State v. Daeria, 51 Conn. App. 149, 150-53
(1998).
In his petition for writ of habeas corpus, petitioner claims his imprisonment is unlawful in that he was deprived of effective CT Page 4614 assistance of appellate counsel. Specifically, he claims that appellate counsel was constitutionally ineffective in failing to brief "claims arising from the evidence, or lack thereof, presented to the jury at trial[.]" Petition at 2. Petitioner contends appellate counsel should have briefed the following claims:
 a. There was no evidence that the victim could identify James Daeria as the shooter;
 b. There was no evidence of intent to substantiate the attempted murder charge;
 c. There was not sufficient evidence that the defendant James Daeria was carrying a pistol without a permit, in particular, no bullets were found, no gun was ever recovered, no gun was found on James Daeria[;]
 d. There was not sufficient evidence that James Daeira committed a Class A, B, or C felony with a firearm, in particular, there was no firearm recovered either from his person or at or near the scene; the victim could not identify James Daeria as the shooter[;]
 e. There was not sufficient evidence that James Daeria conspired to commit larceny, in particular, there was no evidence to prove a meeting of the minds or an agreement[;]
 f. There was not sufficient evidence that James Daeira committed larceny[;]
 g. There was insufficient evidence presented at trial that James Daeria committed assault in the first degree. In particular, the victim could not identify James Daeria as the shooter, no firearm was recovered.
At the habeas trial, petitioner presented Attorney David Bachman as an expert. Bachman testified that he had reviewed the transcript from petitioner's criminal trial in preparation for his testimony. He stated that based on his review of the transcript, he believed Attorney Schwartz was ineffective in not briefing the sufficiency of the evidence underlying petitioner's convictions.
On cross-examination, however, he acknowledged that the CT Page 4615 appellate standard for reviewing claims of insufficient evidence requires that all the evidence be viewed in the light most favorable to sustaining the verdict. Bachman also acknowledged that the second step in the appellate process requires the reviewing court to determine whether, upon the facts so construed and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. See Statev. Sivri, 231 Conn. 115, 126 (1994); State v. Greenfield,228 Conn. 62, 76 (1993).
As to the allegations contained in paragraphs 3 a, c, d, and g of the petition, Bachman maintained that Schwartz provided ineffective assistance of counsel as he failed to brief insufficiency of the evidence of identity, while admitting that the transcript contained the following evidence:
 1. Although the victim could not identify the shooter, he testified that the shooter emerged from the driver's side of the car.
 2. When the defendant was finally apprehended, the Bridgeport officer who had joined the pursuit and ultimately tackled the defendant, was certain he had emerged from the driver's side of the car.
3. The car was registered to the defendant.
 4. The other person apprehended running from the car testified that the defendant was driving, and that the shots came from the driver's side of the car.
5. The defendant admitted to the police that he was driving.
 6. The atomic absorption test performed on the defendant's hands yielded positive results for all three elements which are indicative of having recently fired a gun.
 7. When the police indicated that the atomic absorption test may reveal whether he had fired a weapon, petitioner claimed to have sat in his car earlier that night and fired a gun. When the police stated that they would expect to find a shell casing in his car, defendant then claimed he stuck his hand far out the window before firing.
CT Page 4616 As to the allegation in paragraph #3b of the habeas petition, Bachman maintained that Schwartz was ineffective in failing to brief the insufficiency of the evidence of intent to support the attempted murder conviction. Nevertheless, he admitted the transcript contained the following evidence:
 1. The victim testified that the person who had emerged from the driver's side, fired one shot which struck him in the leg. The victim doubled over, and heard another shot.
 2. As the victim turned to run back toward his house, more shots were fired.
As to the allegations in paragraphs #3e and 3f, Bachman maintained that Schwartz was ineffective in failing to brief the sufficiency of the evidence of a conspiracy to commit a larceny or an attempted larceny. Nevertheless, he admitted that the transcript contained evidence of the following:
 1. The victim was awake in an upstairs bedroom at 2:30 in the morning of the incident and heard the burglar alarm on the truck parked in his driveway.
 2. The victim looked out the window and saw two men running out of the driveway.
 3. The victim chased the two men down the street and saw them approach a car parked around the corner.
 4. After the police chase, three persons emerged from the car and fled; one was never apprehended.
 5. When the defendant's car was searched, the police found a dent puller, flashlight, and screw driver.
 6. An expert witness for the state testified that a dent puller can be used by car thieves to "pop" the ignition; a screwdriver is then used to start the car and drive away.
 7. The victim's father-in-law testified that a motion detector light above the driveway had been unscrewed.
8. There were pry marks on the truck.
CT Page 4617 The respondent presented Attorney Alexander Schwartz, who had represented petitioner on appeal as a witness. After reviewing his considerable criminal trial and appellate experience, Attorney Schwartz stated that he read the transcript from petitioner's trial "several times" in order to determine which issues were the most promising. He stated that he decided to raise the issues he did after reviewing the evidence and researching the law.
Schwartz also testified that he thought long and hard about whether to raise a claim of insufficient evidence, but decided against it. Schwartz stated that, in his professional judgment, raising weak claims on appeal detracts from stronger claims. Schwartz explained that whenever he prepares an appellate brief he goes through a process by which he discards weaker issues in favor of those he deems stronger.
Schwartz explained that he discarded the sufficiency claim because, in the exercise of his professional judgment, he believed the evidence presented below would not be found insufficient by an appellate tribunal.
In any collateral attack on a criminal conviction, certain basic principles apply. "To mount a successful collateral attack on his conviction a prisoner must demonstrate a miscarriage of justice or other prejudice and not merely an error which might entitle him to relief on appeal." D'Amico v. Manson,193 Conn. 144, 156-57 (1984); Sherbo v. Manson, 21 Conn. App. 172, 180, cert. denied, 215 Conn. 808 (1990). To achieve the desired relief the petitioner must show he is burdened with the results of an unreliable conviction. Bunkley v. Commissioner of Correction,222 Conn. 444, 461 (1992).
Habeas corpus petitions often arise long after memories have faded and evidence has disappeared. This collateral attack on a conviction conflicts with the state's strong interest in the finality of judgments. Myers v. Manson, 192 Conn. 383, 387 (1984), citing Henderson v. Kibbe, 431 U.S. 145, 154 (1976). As a result, the petitioner bears a heavy burden of proof. Lubesky v. Bronson,213 Conn. 97, 110 (1989); Veal v. Warden, 28 Conn. App. 425, 430, cert. denied, 224 Conn. 902 (1992). In a habeas corpus petition, the petitioner has the burden of establishing the underlying facts that form the basis of the claimed violations by a fair preponderance of the evidence. Arey v. Warden, 187 Conn. 324, 331
(1982); Blue v. Robinson, 173 Conn. 360, 370 (1977). CT Page 4618
Both the United States Supreme Court and our Connecticut courts have remarked upon the "significant costs" of collateral review of criminal convictions via the writ of habeas corpus. The writ often serves to frustrate the reasonable expectation of the finality of judgments and extends the ordeal of trial for both society and the accused. Engle v. Isaac, 456 U.S. 107, 126-27
(1982); Bunkley v. Commissioner of Corrections, supra,222 Conn. 462.
An accused's right to the effective assistance of counsel is derived from the mandate of the sixth amendment to the United States Constitution,[3] as made applicable to the states through the fourteenth amendment to the United States Constitution.[4] This right also appears in article first, section 8, of the Connecticut Constitution.[5] Siano v. Warden, 31 Conn. App. 94, 96, cert. denied, 226 Conn. 910 (1993). The right to counsel, however, is the right to effective assistance and not to perfect or error free representation. Commissioner of Correction v.Rodriquez, 222 Conn. 469, 478 (1992); Williams v. Bronson,21 Conn. App. 260, 263 (1990).
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient . . . Second, the defendant must show that the deficient performance prejudiced the defense . . . Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington,466 U.S. 668, 687 (1984); Lozada v. Warden, 223 Conn, 834, 842 (1992);Williams v. Warden, 217 Conn. 419, 422 (1991); Aillon v. Meachum,211 Conn. 352, 357 (1989).
Therefore, to prevail on a claim of ineffective assistance of counsel, the convicted defendant must demonstrate both deficient performance and actual prejudice. Bunkley v. Commissioner ofCorrection, supra, 222 Conn. 455. To satisfy the first prong of the test, that counsel's performance was deficient, the defendant must show that his counsel made "`errors so serious that [he] was not functioning as the "counsel" guaranteed by theSixth Amendment.'" Id., quoting Strickland v. Washington, supra,466 U.S. 694. Counsel's representation must be shown to have fallen below an objective standard of reasonableness considering all of the circumstances. Id. at 687-88; Daniels v. Warden, CT Page 461928 Conn. App. 64, 69, cert. denied, 223 Conn. 924 (1992). "Judicial scrutiny of counsel's performance must be highly deferential, and a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Chace v. Bronson, 19 Conn. App. 674,678, cert. denied, 213 Conn. 801 (1989). The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.Strickland v. Washington, supra, 466 U.S. 689; Daniels v. Warden, supra, 28 Conn. App. 69-70, "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland v. Washington, supra, 466 U.S. 689.
In order to satisfy the second prong of the test, that counsel's deficient performance prejudiced his defense, the defendant must prove that "counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable." Bunkley v Commissioner of Correction, supra,222 Conn. 455; Strickland v. Washington, supra, 466 U.S. 687. Even where, as here, the challenge is to the effectiveness of appellate rather than trial counsel, the focus remains on the probable effect of the alleged error on the outcome of the trial, not the appeal. Bunkley v. Commissioner, supra, 222 Conn. 455.
This second prong of the test is satisfied if the defendant can demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, supra,466 U.S. 694; Siano v. Warden, supra, 31 Conn. App. 98.
"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffective [assistance] claim on the ground of lack of prejudice . . . that course should be followed."Aillon v. Meachum, supra, 211 Conn. 362; Fair v. Warden,211 Conn. 398, 430, 559 A.2d 1094 (1989). As a result, "[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."Strickland v. Washington, supra, 466 U.S. 700.
As outlined in the preceding fact statement, Attorney Schwartz CT Page 4620 made a strategic decision not to challenge the sufficiency of the evidence on appeal in light of two factors: (1) his awareness that the appellate standard of review required that all evidence be viewed in the light most favorable to sustaining the verdict; and (2) his professional judgment that the evidence would be determined sufficient under this standard. In order for petitioner to prevail; therefore, he must establish that Attorney Schwartz' assessment of either the law or the facts relevant to the proposed sufficiency claim was, not merely erroneous, but professionally unreasonable. This he has not done.
Attorney Schwartz was correct as to the legal standard by which any insufficiency claim would be judged. See, e.g., State v.Sivri, supra, 231 Conn. 126; State v. Greenfield, 228 Conn. 62,76 (1993). Because an appellate tribunal would necessarily construe all the evidence in the light most favorable to sustaining the verdict, conflicting or ambiguous evidence would not undermine otherwise sufficient evidence. It is well-established that "such inconsistencies and conflicts are grist for the mill operated by the trier of fact, not by an appellate court . . ." State v. Mancinone, 15 Conn. App. 251, 259, cert. denied, 209 Conn. 818 (1988); citing In re Robert K.,12 Conn. App. 585, 587-90, 532 A.2d 1319 (1987).
Further, although petitioner's expert disagreed with the ultimate assessment of the evidence, he did admit, on cross-examination, to the existence of evidence in the transcript supporting each of petitioner's convictions. What Attorney Bachman said about the likelihood of prevailing on appeal in light of this evidence was, "It was a long shot . . . but nothing ventured nothing gained." This is hardly the standard by which the effectiveness of appellate counsel is to be judged.
In deciding to discard a weak sufficiency claim in favor of stronger claims Attorney Schwartz exercised his professional judgment. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 749 (1983); Valeriano v.Bronson, 209 Conn. 75, 89 (1988).
It is clear that an appellate advocate is not under an obligation to raise every conceivable issue. Magnotti v. Meachum,22 Conn. App. 669, 682 (1990). As our Supreme Court has recognized, raising a "torrent of claimed error" "serves neither CT Page 4621 the ends of justice nor the defendant's own purposes as possibly meritorious issues are obscured by the sheer number of claims that are put before [the reviewing court]." State v. Pelletier,209 Conn. 564, 566-67 (1989).
"`Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one [issue] . . . [M]ultiplying assignments of error will dilute and weaken a good case and will not save a bad one.' Jackson, Advocacy before the United States Supreme Court, 25 Temple L.Q. 115, 119 (1951)." Jones v. Barnes, 463 U.S. 745, 752,103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983).
Here, petitioner's identity as the shooter was amply supported by the victim's testimony that the shooter emerged from the driver's side, the further testimony that petitioner fled from the driver's side, petitioner's admission that he was driving, Cooney's testimony that petitioner was driving and the shots came from the driver's side, the results of the atomic absorption test, evidence of petitioner's consciousness of guilt, and the fact that the car was registered to the petitioner. This evidence defeats petitioner's contention that the evidence supporting his attempted murder, assault, and possession of a firearm convictions was legally insufficient. (Petitioner's allegations in paragraph 3(a), (c), (d), and (g) of the petition.)
Evidence of petitioner's intent to kill in support of his attempted murder conviction was also offered to the trial court. "Intent to cause death may be inferred from the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death. . . ." State v. Santiago, 45 Conn. App. 297, 300, cert. denied, 241 Conn. 927 (1997). Evidence that the petitioner shot the victim once, the victim doubled over in reaction to the injury, and that petitioner continued to fire at him as he retreated, was sufficient for the jury to infer an intent to kill. (Petitioner's allegation in paragraph 3(b) of the petition.)
As to the sufficiency of the evidence of attempted larceny,[6]
and a conspiracy to commit larceny, that, too, is apparent. Evidence revealed that the petitioner, along with two other CT Page 4622 individuals, parked a car around the corner from the victim's house, unscrewed a motion detector light in the driveway, left pry marks on the truck, and fled when discovered. In addition, implements commonly used in the theft of vehicles were found in the petitioner's car. All of this was certainly sufficient to prove the petitioner, "with intent that conduct constituting a crime be performed, [agreed] with one or more persons to engage in . . . such conduct and . . . one of them [committed] an overt act in pursuance of such conspiracy." General Statutes § 53a-48. In addition, it was sufficient to show the crime they intended, and attempted, to commit was a larceny. See General Statutes §§ 53a-49, 53a-119, and 53a-124.
Attorney Schwartz presented himself as competent and well educated, as well as having a good deal of experience in criminal and appellate litigation. A review of his appellate brief (Defendant's Exhibit 1), reflects a complete understanding of the facts and issues presented at trial. He testified that his focus on appeal were the issues raised in the pretrial suppression motions filed and relied on by trial counsel. His belief was that these were the best issues to raise on behalf of the petitioner on appeal. With regard to the sufficiency of evidence issue, he related the appropriate standard that the Appellate court would have used and then stated, that in his professional opinion, that argument would not have succeeded on appeal. He further testified that his opinion and strategy differed from Attorney Backman ("nothing venture, nothing gained"), and felt that presenting multiple issues with relatively no chance of success, would detract from the real issues. He also expressed his opinion that there was no reasonable basis to claim that the issue of intent would have been successful if raised and there would have been no reasonable likelihood of success.
From the evidence and testimony presented, it is apparent that Attorney Schwartz understood the facts and law relevant to this appeal and made decisions regarding the issues to be presented to the Appellate Court based upon reasonable legal strategy. This court does find that the actions of Attorney Schwartz did not result in actual prejudice to the petitioner.
Accordingly, the petition is denied and the matter is dismissed.
Resha, J. CT Page 4623