[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before this court is the plaintiffs amended petition for habeas corpus relief based on claims of ineffective assistance of counsel. The respondent filed a return asserting that the petitioner is not entitled to relief. For reasons set forth below, this court grants the petition for both Count One and Count Two.
The petitioner, Thomas Sanders, filed this action alleging in Count One that he was denied the right to effective counsel, in that his trial attorney failed to adequately investigate his matter prior to trial; in that his trial counsel failed to meaningfully engage in plea bargaining; and in that his trial counsel failed to meaningfully convey to petitioner a plea offer that had been extended by the State. Amended Petition, dated December 18, 2000. The petitioner also claims, in Count Two of his Amended Petition, that he was denied his right to sentence review, because his trial counsel failed to advise him about this right and failed to file a timely request. Amended Petition, dated December 18, 2000.
The Respondent denies the essential elements asserted in the Petition, and notes that, notwithstanding petitioner's assertion that these claims of ineffective counsel have not been previously raised, they were pled in two prior habeas actions (Thomas Sanders v. Warden, CV 97 0399709; andThomas Sanders v. Warden, CV 950380843.) Those claims were withdrawn, without prejudice in both cases.
The court finds the following facts to have been proven:
1. The petitioner's date of birth is February 10, 1975.[1]
 2. On November 9, 1993, following a jury trial, the petitioner was convicted of criminal attempt to commit assault in the first degree in violation of General Statutes sections 53a-49 and 53a-59 (a) (1) and carrying a pistol without a permit in violation of General CT Page 529 Statutes section 29-35 and acquitted of attempted robbery in the first degree and conspiracy to commit robbery in the first degree.
 3. On December 10, 1993, the petitioner was sentenced to the maximum sentence. (20 years to serve for attempted assault charge and five years to serve for the carrying pistol without a permit charge. Sentences to run consecutively to each other and consecutive to the sentence the petitioner was serving when convicted in November.)
 4. Jury selection for the November, 1993 trial commenced on November 1, 1993.
 5. Evidence in the November, 1993 jury trial commenced on November 5, 1993.
 6. Prior to the November, 1993 trial, the defendant had been convicted of robbery in the first degree, conspiracy to commit robbery in the first degree and larceny in the third degree in October, 1993.
 7. On October 15, 1993, the court (Fracasse, J.) sentenced the petitioner to fourteen years, execution suspended after nine years, three years probation for the robbery convictions.
 8. On February 19, 1993, prior to his first trial (the October, 1993 trial) the State offered to resolve all the matters pending against the petitioner (the robbery matter which led to the October, 1993 trial, the assault matter which led to the November, 1993 matter, and a third matter involving allegations of narcotics possession, failure to appear and larceny) by agreeing to recommend a sentence of fifteen years, execution suspended after ten years, if the petitioner would enter guilty pleas in all files.[2]
9. The petitioner rejected the February, 1993 offer in February, 1993.
 10. In February, 1993, the petitioner was represented by Assistant Public Defender Thomas Conroy.
 11. In March, 1993, the petitioner retained the services of private counsel, Attorney Ernest Diette.
 12. Attorney Diette represented the petitioner from March, 1993 and during all times pertinent to this action.
 13. Subsequent to the first offer, the petitioner was accused of another crime, involving allegations of a sexual assault. CT Page 530
 14. The state (Assistant State's Attorney Gary Nicholson) extended a second offer to the petitioner through his counsel, Attorney Diette, to resolve the matters pending against him following his October, 1993 conviction including robbery charges, assault charges, the weapons charge and a sexual assault charge, with a recommendation of a sentence cap of 18 years, execution suspended after 12 years followed by 3 years of probation to run concurrently with the sentences that the petitioner was already serving for the October, 1993 convictions, in exchange for a guilty plea to the Attempted Robbery, Pistol without a Permit, Sexual Assault 2, and Failure to Appear, 1, charges.[3]
 15. The court (Ronan, J.) was aware of the second offer and participated actively in the pretrial at which the second offer was extended.
 16. Attorney Nicholson extended to Attorney Diette the second offer after October 15, 1993.[4]
17. Attorney Diette conveyed the state's second offer to the petitioner.
18. Attorney Diette did not meaningfully convey the state's second offer.
 19. Attorney Diette did not discuss with or explain to the petitioner the implications of accepting or rejecting the second offer.
 20. Attorney Diette did not render to the petitioner sufficient legal advice regarding the state's second offer.
 21. The petitioner would have accepted the second offer had Attorney Diette adequately advised him about it.
 22. The court would have accepted the agreement of the parties and sentenced the petitioner in accordance with the recommendation contained in the second offer had the petitioner accepted it.
 23. Attorney Diette failed to advise the petitioner of his right to file for Sentence Review following his conviction in November, 1993.
 24. Attorney Diette failed to timely file for Sentence Review on behalf of the petitioner.
25. As a result of Attorney Diette's failure, the petitioner lost the CT Page 531 opportunity to have a request for sentence review entertained.
POSITIONS OF THE PARTIES
The petitioner argues that he was denied effective counsel because: a.) his attorney failed to convey to him the second offer extended by the state; b.) his attorney failed to fully explain to him the implications of accepting rejecting the second offer; and c.) his attorney failed to advise him or to timely file a request for sentence review.[5]
To support his position the petitioner relies on the following facts: there is no record of the date of the purported second offer; there is no record of the petitioner having been brought to court between the time of his sentencing in October 15, 1993 and the commencement of jury selection in his second trial on November 1, 1993; there is nothing in the state file, notwithstanding the testimony of Attorney Nicholson, memorializing that the second offer was rejected; and there is no evidence that Attorney Diette, even if he conveyed the second offer, discussed and informed the petitioner of the legal implications of rejecting or accepting the offer. The petitioner testified that his attorney did not discuss with him the state's second offer, nor did he explain the advisability of accepting such an offer. The petitioner also testified that Attorney Diette did not inform him of his right to file for Sentence Review.
The respondent's position is that the petitioner is not entitled to habeas relief. To support this position the respondent argues that first, the petitioner lacks credibility and that the court should reject, entirely, his testimony. Second, the respondent argues that because this court must indulge a strong presumption that Attorney Diette's conduct fell within the wide range of reasonable professional assistance, and because the evidence presented by the petitioner failed to rebut this presumption, the petitioner's claims must be denied. Third, the respondent argues that because the defendant rejected the first offer, at which time he was represented by Attorney Conroy (against whom there is no claim of ineffective counsel) this court may infer that the petitioner similarly rejected the State's second offer, when extended by Attorney Diette. The defendant also argues that because the court may safely infer that Attorney Conroy explained the legal implications of the state's offer to the petitioner, this court may also infer that Attorney Diette did the same. Finally, the respondent argues that the petitioner must prove, which he did not, that he would have taken the offer extended before he is entitled to relief.
BURDEN OF PROOF CT Page 532
In a habeas matter the petitioner bears a heavy burden of proof.Lubesky v. Bronson, 213 Conn. 97, 110, 566 A.2d 688 (1989); Veal v.Warden, 28 Conn. App. 425, 430, 611 A.2d 911, cert. denied, 224 Conn. 902,615 A.2d 1044 (1992). The petitioner has the burden of establishing the underlying facts that form the basis of the claimed violations by a fair preponderance of the evidence. Arey v. Warden, 187 Conn. 324, 331,445 A.2d 916 (1982); Blue v. Robinson, 173 Conn. 360, 370, 377 A.2d 1108
(1977).
A claim of ineffective assistance of counsel, such as the one asserted in the instant matter requires a showing of proof under a two prong test. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984). See Levine v. Manson, 195 Conn. 636, 639, 490 A.2d 82
(1985); Nieves v. Commissioner, 51 Conn. App. 615, 724 A.2d 508 (1999), cert. denied, 248 Conn. 905, 731 A.2d 309 (1999). "[T]he defendant must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." (Internal quotation marks omitted.) Nieves v. Commissioner, supra, 620. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) Fair v. Warden,211 Conn. 398, 402, 559 A.2d 1094 (1989), cert. denied, 493 U.S. 981,110 S.Ct. 512, 107 L.Ed.2d 514 (1989). Thus, in order to prevail the "petitioner must make a two-fold showing: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competency contributed so significantly to his conviction as to have deprived him of a fair trial." (Internal quotation marks omitted.) Valeriano v. Bronson, 209 Conn. 75,85-86, 546 A.2d 1380 (1988); accord Mozell v. Commissioner,51 Conn. App. 818, 820, 725 A.2d 971 (1999).
In evaluating the conduct of the attorney accused of rendering ineffective counsel this court must indulge the strong presumption in favor of competency. "Judicial scrutiny of counsel's performance must be highly deferential, and a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Chace v. Bronson, 19 Conn. App. , 674, 678, 564 A.2d 303 cert. denied, 213 Conn. 801, 567 A.2d 832 (1989).
THE SECOND PLEA OFFER CT Page 533
Unfortunately, the record is far from clear regarding the second offer from the state. Taking the exhibits and the testimony of Attorney Nicholson together this court concludes that the second offer was extended to Attorney Diette at a judicial pretrial sometime before the commencement of the second trial. But, neither the exhibits, nor the testimony establish the date of this pretrial. Nor is there a court record of there having been a pretrial.
The exhibits establish, only, notations that the state had formulated an offer, not that such offer was extended or rejected. Specifically, exhibit H is an undated, unsigned copy of a piece of paper which notes the sentence the petitioner was serving for the October, 1993 conviction, and an "offer" in exchange for a plea to the charges of Attempted Robbery[6], Pistol without a Permit, Sexual Assault,[7] and Failure to Appear 1. Exhibit G, which is a copy of the State's file, contains a notation, which is similarly undated: "new sexual assault file: new offer 18 e/s 12 cap. " Because one notation references the sentence the petitioner was serving, one may conclude (and Attorney Nicholson testified) that the second offer was generated sometime after October 15, 1993, the date the petitioner was sentenced for the first file.
While the exhibits, alone, do not establish that a second offer was extended or rejected, the testimony of Attorney Nicholson, and the fact that the petitioner went forward with the jury trial on Robbery, Assault and Weapons charges in November, 1993 support this conclusion. Attorney Nicholson testified that he and Attorney Diette met, in a judicial pretrial before Judge Ronan, to attempt to resolve the pending files following the petitioner's October, 1993 conviction and sentencing. At this pretrial, Attorney Nicholson testified that he extended an offer, in the presence of Judge Ronan, to Attorney Diette, who left the judge's chamber, purportedly to discuss the offer with his client, the petitioner. Upon returning to the chamber some time later, Attorney Diette indicated that the offer was rejected. The petitioner gives a different version. He testified that Attorney Diette never talked to him about an offer. He says he was not brought to court between October 16, 1993 and October 31, 1993 and the exhibits support this statement. Weighing the substance of the exhibits and the testimony of Attorney Nicholson, on the one hand, against the testimony of the petitioner, on the other, this court finds that the weight of the evidence supports the conclusion that the petitioner was informed by Attorney Diette of the State's second offer[8]. Therefore, this court finds that the weight of the evidence supports a conclusion that a second offer was extended to the petitioner, through his counsel.
Conveyance of an offer is only one requirement in the rendering of CT Page 534 effective counsel. The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in criminal proceedings. Boria v. Keane, 99 F.3d 492, 496-97 (2nd Cir., 1996). In order to be effective counsel, an attorney must do more than convey an offer. The failure to advise a client about the legal ramifications of accepting or rejecting an offer to plead constitutes the rendering of ineffective counsel. "In discussing the duty of an attorney to inform his client of the significance of a proffered plea bargain the Boria court suggested that this duty is so obvious that it needed little comment observing that: "There seems to be no Second Circuit decisions dealing with the precise question of a criminal defense lawyer's duty [to advise his client]. . . . This lack of specific decision undoubtedly arises from the circumstances that such duty is so well understood by lawyers practicing in this Circuit that the question has never been litigated.'" (Citation omitted.) Cooke v. State, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 960332626 (Melville, J., May 24, 2000).
The only direct evidence regarding the content of any discussions between he and counsel was from the petitioner. Attorney Diette did not testify at the hearing in this matter.[9] Applying the reasoning of the Supreme Court, this court drew no inference from the fact that the petitioner did not call him. See, D'Amico v. Manson, 193 Conn. 144, 153,476 A.2d 543 (1984). Without testimony from Attorney Diette, who presumably was the only other witness to conversations between he and the petitioner regarding the state's second plea offer, the court had for consideration as direct evidence, only the testimony of the petitioner. The other evidence only established that an offer had been extended.
The testimony of the Petitioner establishes that he was not legally advised about the advisability' or ramifications of accepting or rejecting the state's second offer.[10] Accordingly, this court finds that Attorney Diette rendered ineffective counsel by failing to adequately advise the petitioner about the second offer.
The duty of counsel is to advise his client, fully, of the implications of plea negotiations. There is no evidence that Attorney Diette did this. Even indulging the presumption that Attorney Diette's conduct fell within the broad parameters of competent professional conduct, this court finds that Attorney Diette failed to discuss with the petitioner the implications of accepting/rejecting the state's second offer.
Though there is some evidence, albeit circumstantial, to support a finding that Attorney Diette informed the petitioner of the second offer, there is no evidence to support a finding that he fully explained CT Page 535 or advised the petitioner about it. To reach a conclusion that the petitioner was adequately advised, this court would be forced to speculate, since no facts were introduced regarding this. Ordinarily, a court might be entitled to rest its decision on a presumption of professional competence. Given the state of the facts in this case (including the fact that defense counsel failed to render effective counsel in other respects while representing the petitioner) this presumption is far from conclusive in this case. Evaluating the evidence and indulging the required presumption, this court finds that the petitioner has met his burden of proving ineffective counsel, in that he has proven that Attorney Diette failed to meaningfully convey to him the state's second offer.
The establishment of inadequate counsel, however, is insufficient to support a habeas petition without proof of prejudice. Proof of prejudice requires two showings. First, the petitioner must prove that had he been adequately informed of the offer, he would have accepted it. In this case, to decide whether or not the petitioner has made the first showing, the petitioner urges this court to apply an objective standard (what would a reasonable person do when afforded the state's second offer) and the respondent argues for the application of a supported subjective standard (what would this petitioner have done, if provided with the state's second offer — provided this proof comes from more than just the petitioner[11].) The court finds that the appropriate standard to apply is the subjective one.
The petitioner testified that he would have accepted the state's second offer had it been extended and explained to him. This court finds his testimony credible on this issue. This court is not unaware of the powerful motivations that the petitioner has to be untruthful. This court has taken that into consideration when evaluating the credibility of his testimony. This court has similarly considered the fact that the petitioner rejected a previous offer brought to him by prior counsel. However, the fact that the petitioner rejected an initial offer, before a conviction and the imposition of an almost decade long sentence, does not conclusively establish that he would reject a second offer.[12]
Similarly, the petitioner's motivations, while important, are not the only considerations necessary to reach an ultimate determination of the disputed issues in this matter. Viewing the totality of the evidence, and drawing all reasonable inferences therefrom, this court finds that the petitioner has sufficiently proven prejudice as to the first prong. The petitioner has met his burden of proving that had he been given adequate legal advice he would have accepted the second offer from the state.
The second showing that the petitioner must establish is that the trial CT Page 536 court would have accepted the agreement and imposed sentence within the proposed sentence cap.
Without a showing by the petitioner that the trial court would have accepted the parties agreement and imposed sentence in accordance with it, the harm or prejudice to the petitioner is merely speculative. InCimino v. Robinson, 6 Conn. App. 680, 683, 507 A.2d 486, cert. denied,200 Conn. 802, 509 A.2d 517 (1986), the appellate court held that because "there was no finding or evidence that, had [the petitioner] accepted the state's offer . . . the court would have accepted the plea bargain and imposed that sentence," the petitioner's claim of prejudice was purely speculative.
There was no direct evidence regarding whether or not the court would have accepted the plea agreement.[13] There is, however, testimony from which this court may make certain reasonable inferences regarding the subject.[14]
Attorney Nicholson testified that the second offer was extended as a result of a judicial pretrial, scheduled at the court's behest.
 ". . . [T]he offer was made after Mr. Sanders was convicted on the first file because it was the Court's feeling that, inasmuch as he had received a sentence of incarceration on the first file, the Court wanted to bring in the second file to have further discussions to see if Mr. Sanders would accept an offer because, as I said, he already — had already received a jail sentence on the first file[15]
. . . [T]his was not an offer that I made to Mr. Diette in a vacuum; this is a judicial pretrial with Judge Ronan at which time I indicated that I was offering Mr. Sanders a sentence of 18 years, suspended after 12 years, and that was not accepted."
Transcript, Testimony of Attorney Nicholson, pp. 17-8.
Attorney Nicholson then further testified that "the Judge wanted to know whether or not Mr. Sanders was going to accept [the offer]. So obviously, Mr. Diette left to go downstairs to talk to Mr. Sanders . . . And Mr. Diette came back upstairs and said that Mr. Sanders was not interested in the offer." Transcript, Testimony of Attorney Nicholson, p. 18. Finally, Attorney Nicholson testified that "Judge Ronan inquired of him [Attorney Diette] as to what the situation was, and Mr. Diette indicated to Judge Ronan that he was not interested in the offer . . . Judge Ronan indicated that this case was a case that he planned on getting started in the near future. . . . We were not given a trial date . . . but we both knew that it was going to be coming up in the very near CT Page 537 future." Transcript, Testimony of Attorney Nicholson, p. 19.
From this testimony the court may safely conclude that the Judge had been prepared to accept the plea agreement offered by the prosecution. Though neither counsel directly asked Attorney Nicholson whether or not the Judge had indicated that he would accept the agreement if the offer was accepted by the defendant, this is implicit from the comments and actions of the Judge as testified to by Attorney Nicholson.
Attorney Nicholson's comment that the offer was not made in a vacuum is the first statement to indicate that he formulated the offer taking into consideration the concerns of the Judge. Attorney Nicholson's second statement that the Judge inquired of Attorney Diette whether or not the offer was accepted or rejected suggests that the Judge was aware of the substance of the offer. Third, because the offer was communicated to both the Judge and the defense counsel prior to the time defense counsel was sent out to discuss it with his client, it also suggests that the Court would have accepted the agreement[16]. As Attorney Nicholson described the scene "we were sitting in Judge Ronan's chambers; and when an offer was made, the judge wanted to know whether or not Mr. Sanders was going to accept it." Transcript, Testimony of Attorney Nicholson, p. 18. Finally, the Judge's statement, after learning from Attorney Diette that the offer was rejected, that the trial would begin soon indicates that because the offer was rejected a jury trial would be necessary. This implies that had the offer been accepted a trial would not have been necessary, which further supports the conclusion that the court would have accepted the parties' agreement. It is certainly possible to reach a conclusion other than the one drawn by this court. But when considering the evidence and what is more likely than not, it is more likely from the facts found, that the court would have sentenced the petitioner in accordance with the second offer extended by the petitioner, had the petitioner accepted the second offer.
Had Attorney Nicholson been asked the direct question about whether or not the court had represented that he would accept the proposed agreement, there would be no doubt regarding his understanding of what the court would have done, but that is not the standard of proof necessary. Had the evidence upon which the court bases its conclusions been objected to, or had either counsel moved to strike it this court could not reach the same conclusions.[17] However, the evidence, such as it was, is available for full consideration by the court.
Based on the evidence before it, this court concludes that the petitioner has proven prejudice: he has established that he would have accepted the offer had it been explained fully to him; and he has CT Page 538 proven, by a preponderance of the evidence, that the court would have accepted the plea agreement and sentenced in accordance with it.
Having proven cause and prejudice, this court must fashion an appropriate remedy. In habeas matters, the court must fashion a remedy appropriate to the harm. "A habeas court must fashion a remedy appropriate to the constitutional right it seeks to vindicate." Ghant v. Warden,State Prison, Superior Court, judicial district of Tolland at Rockville, Docket No. 93-0001670 (Jul. 9, 1999, Zarella, J.). "A habeas court has considerable discretion to frame a remedy, so long as that remedy is commensurate with the scope of the constitutional violations which has been established, Gaines v. Manson, 194 Conn. 510 (1984), p. 528." (Internal quotations omitted.) Molina v. Warden, Superior Court, judicial district of Tolland at Somers, Docket No. CV 90 1024 S (Feb. 2, 1994, Sferraza, J.).
The appropriate remedy in this case is not a new trial, nor is the petitioner seeking one. Rather, the petitioner is seeking an imposition of the sentence he would have received had he accepted the state's second offer. This does appear to be the appropriate remedy. Therefore, this court orders that the sentence the petitioner is currently serving for his convictions in matter CR6-342388, be reduced to the time the petitioner would have been sentenced to serve had he been sentenced in accordance with the maximum contemplated by the state's second offer: eighteen (18) years, execution suspended after twelve (12) years, three (3) years probation — sentence to run concurrent to the sentence previously imposed on October 15, 1993[18]. Because the second offer contemplated a guilty plea to the Sexual Assault and Failure to Appear, 1st charges, this court orders the sentence reduction provided the petitioner pleads guilty to those two charges as well.[19]
ADVICE ABOUT SENTENCE REVIEW
The court next turns to the petitioner's second claim: that his lawyer failed to advise him about his right to apply for sentence review, and failed to apply for sentence review. Because the court finds that the petitioner is entitled to habeas relief on the first count of his petition, there is no reason to reach Count Two. However, in order to fully dispose of all contested issues before it, this court makes the followings findings.
Though the issue of failing to advise about sentence review was raised in his petition, and though the petitioner presented evidence on this issue, the respondent did not address it in the Post-Trial or Reply Briefs. CT Page 539
The court finds that the petitioner proved that Attorney Diette failed to adequately advise the petitioner about his right to apply for sentence review and similarly failed to timely file for sentence review on behalf of his client. Thus, the petitioner is entitled to relief on this claim. The appropriate remedy is a restoration of his right to request sentence review. Accordingly, had the court not found that the petitioner was entitled to relief under Count one of his petition, it would have ordered that the petitioner's right to apply for Sentence Review, be restored[20].
ORDERS OF THE COURT
For the foregoing reasons the petitioners first claim for relief is granted and his sentence in matter CR6-342388 is ordered reduced to an effective sentence of eighteen years, execution suspended after twelve years followed by three (3) years of probation: for the Attempted Assault charge — eighteen years, execution suspended after twelve years followed by three (3) years of probation; for the Carrying a Pistol Without a Permit charge — five years to serve followed by three (3) years probation. Sentences to run concurrent to each other and concurrent with the sentence previously imposed upon the petitioner on October 15, 1993 by Judge Fracasse. Sentence reduction to be executed only after the petitioner has entered guilty pleas to the Sexual Assault charge and the Failure to Appear charge that were pending against him when the second offer was extended.
The petitioner's second petition is granted. Had the court not found in his favor on Count One it would have ordered a restoration of his rights to sentence review. Judgement is entered for the petitioner on both Counts.
 ___________________ Angela Robinson-Thomas, Judge