## MARVIN WOOTEN *v.* COMMISSIONER OF CORRECTION
### (AC 27575)

Bishop, Gruendel and Pellegrino, Js.

---

Argued October 9—officially released December 11, 2007

*Christopher M. Neary*, special public defender, for the appellant (petitioner).

*Richard T. Biggar*, assistant attorney general, with whom were *Robin S. Schwartz*, assistant state's attorney, and, on the brief, *Richard Blumenthal*, attorney general, *Jonathan C. Benedict* and *David I. Cohen*, state's attorneys, and *Julia K. Conlin* and *Kelly A. Masi*, assistant state's attorneys, for the appellee (respondent).

*Opinion*

BISHOP, J. In the habeas court, the petitioner, Marvin Wooten, claimed that, in two underlying criminal matters, the state had violated his due process rights by its failure to honor the terms of a plea agreement and that the respondent, the commissioner of correction, had misapplied his presentence confinement and good time credits to his concurrent criminal sentences. After a hearing, the habeas court rejected the petitioner's claims. The petitioner now appeals from the judgment of the habeas court, claiming that the court improperly concluded that (1) the state did not violate his due process rights by failing to honor a plea agreement and (2) the respondent properly applied his presentence confinement credits and, in doing so, violated neither his constitutional rights to equal protection, nor the prohibition against the imposition of ex post facto laws, or the separation of powers doctrine implicit in the state and federal constitutions. We affirm the judgment of the habeas court.

The following factual and procedural history is relevant to our consideration of the petitioner's appeal. The petitioner was taken into the custody of the respondent

on September 7, 1995, and charged in criminal informations stemming from two incidents occurring on different dates. They were assigned docket numbers CR95-0111031 (Stamford case) and CR95-0111033 (Bridgeport case). In the Stamford case, the petitioner was charged in connection with an incident that occurred on July 3, 1993. In the Bridgeport case, the petitioner was charged in connection with a September 24, 1993 incident. From the time of his arrest until his first sentencing, the petitioner remained in custody in lieu of posting bond.[1]

On June 14, 1996, the petitioner pleaded guilty in the Bridgeport case to possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (a). Subsequently, on July 26, 1996, the court sentenced the petitioner to a total effective term of eighteen years incarceration, execution suspended after ten years, and five years of probation with special conditions.

In the Stamford case, the petitioner pleaded guilty on November 22, 1996, to manslaughter in the second degree in violation of General Statutes § 53a-56 and attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a. On December 20, 1996, the petitioner was sentenced to a total effective term of twenty-five years incarceration, execution suspended after fifteen years, and five years of probation, to run concurrently with the Bridgeport sentence.

In sum, the petitioner was held in lieu of bond from the date of his arrest on September 7, 1995, until his

---

[1] We note that the habeas court found that the Bridgeport incident occurred on September 7, 1995, which is the same date as the petitioner's arrest on both files. In its brief, the respondent has pointed out that the original information in the court's file notes the date of offense as September 24, 1993. Although the petitioner does not comment on this discrepancy, we note it simply to clarify the record. It does not impact the correctness of the habeas court's judgment or the reasoning of this opinion.

sentencing on July 26, 1996, in the Bridgeport case. Thereafter, he became a sentenced inmate, a status he held on December 20, 1996, the date of his sentencing in the Stamford case. On the basis of the petitioner's pretrial confinement from the date of his arrest, September 7, 1995, until he became a sentenced inmate on July 26, 1996, the respondent credited the petitioner with a total of 323 days of presentence confinement credit and 107 days of presentence good time credit in accordance with the then applicable statutes. Although the respondent initially posted these credits to the petitioner's time sheet applicable to the Bridgeport case, once the petitioner pleaded guilty in the Stamford case, the respondent transferred all of the petitioner's presentence confinement credits to the second, or longer sentence, in accordance with its then existing policy. The practical effect of posting these credits to the longer sentence was that the posting resulted in an earlier anticipated release date. Later, on February 23, 2005, the respondent removed these credits from the petitioner's time sheet relating to his release date for the Stamford case and applied them to his anticipated release date for the Bridgeport case. As a consequence, because the Stamford case carries the longer sentence, the posting of the credits to the petitioner's first and shorter Bridgeport sentence results in no advancement of his anticipated release date from incarceration after completion of both concurrent sentences.

On July 27, 2005, the petitioner filed an amended petition for a writ of habeas corpus containing the following allegations: that his due process rights were violated because the state failed to honor its plea agreement; that his equal protection rights were violated because he is being required to serve more time than someone who was able to post bond and because the respondent did not apply his presentence credit in the manner similar to that of other similarly situated

inmates; that the respondent violated the separation of powers doctrine in interpreting judicial opinions; and, finally, that the manner in which the respondent applied the petitioner's presentence credit violated the ex post facto and due process clauses of the state and federal constitutions.

At the habeas trial, Michelle Deveau, a records specialist for the respondent, testified that the removal of the petitioner's presentence confinement and presentence good time credits from his Stamford sentence and the return of the presentence confinement credit to his Bridgeport sentence in February, 2005, with the resultant impact on the petitioner's release date, was due to the Supreme Court's decision in *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 860 A.2d 715 (2004).[2] Deveau testified that the petitioner was sentenced in the Bridgeport case in July, 1996, and his presentence confinement credits were applied to that sentence upon sentencing. She indicated that, in accordance with the then existing policy of the respondent, the petitioner's credits were subsequently moved to the Stamford case because it was the longer sentence. Deveau testified that in December, 2004, on the advice of the office of the attorney general, the respondent began reevaluating the posted anticipated release dates of inmates with the nearest discharge dates and adjusting inmates' time sheets affected by *Harris*,

---

[2] Although we note that *Harris* concerned only presentence confinement credit and not presentence good time credit, the petitioner makes no claim that the reasoning of *Harris* should apply with less force to one and not to the other. On appeal, the petitioner makes no distinction between presentence confinement time and presentence good time in his reasoning regarding the application of *Harris* to his situation. Nor do we perceive any reason to make a distinction because, in accord with *Harris*, if both earned presentence good time and confinement credits are applied to the first sentence, neither is forfeited. That their application to the first sentence does not result in the advancement of an inmate's release date is a matter of factual happenstance relating to the terms of the respective sentences.

which was released on November 30, 2004. Deveau stated that no person who already had been discharged before this recalculation was returned to the custody of the respondent as a result of a recalculation and that she did not know how many inmates had been released from their sentences prior to the recalculation of inmates' release dates in accordance with the dictates of *Harris*. Deveau indicated that prior to *Harris*, it was the respondent's policy to apply credits to an inmate's longest sentence so that the credits would inure to the benefit of the inmate in shortening the total period of incarceration. She testified, however, that as a result of the respondent's application of *Harris* and the attendant recalculation, which required that the credits be applied to the first sentence,[3] the petitioner's credits were transferred back to the Bridgeport case. She acknowledged that because the respondent believed that the underlying offense in the Bridgeport case occurred in 1995 and was, therefore, not eligible for good time credit, the petitioner was not given any good time credit for his presentence confinement between September 7, 1995, and July 26, 1996.[4]

---

[3] According to *Harris*, "when concurrent sentences are imposed on different dates, the presentence confinement days accrued simultaneously on more than one docket are utilized fully on the date that they are applied to the first sentence. Hence, they cannot be counted a second time to accelerate the discharge date of any subsequent sentence without violating the language of [General Statutes] § 18-98d (a) (1) (A)." *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 823.

[4] It appears from the record that the respondent mistakenly believed that the Bridgeport offense took place in 1995. On the basis of this belief, the respondent removed the good time credits from the Stamford time sheet and did not reapply these credits to the Bridgeport time sheet because inmates who commit offenses after October 1, 1994, are not eligible to receive good time credit. See *Velez* v. *Commissioner of Correction*, 250 Conn. 536, 552, 738 A.2d 604 (1999). Because the Bridgeport offense took place in 1993, the petitioner is eligible to receive good time credits relating to his sentence for this offense. In this instance, however, because the second sentence is substantially longer than the first, it appears that proper application of good time credits to the first sentence will afford the petitioner no practical relief.

By memorandum of decision dated March 15, 2006, the court denied the petition for a writ of habeas corpus. In denying the petition, the court found that the petitioner did not present any evidence in support of his claim that he was induced by promises regarding jail credit when entering his plea deal, and, therefore, the court deemed that claim abandoned. The court similarly found that the petitioner failed to present any evidence as to his claim of an equal protection violation stemming from his inability to post bond or his violation of separation of powers claim and deemed those claims abandoned as well. As to the petitioner's remaining equal protection claim, the court found that, in recalculating the petitioner's presentence credit, the respondent was merely correcting an error to comply with statutory requirements as interpreted by the Supreme Court. The court also rejected the petitioner's ex post facto claim on the basis that the petitioner did not receive any increased punishment by the respondent's removal of jail credit that the petitioner was not entitled to receive. The court granted the petition for certification to appeal, and this appeal followed. Additional facts will be set forth as necessary.

We begin our analysis by setting forth the appropriate standard of review. "Although a habeas court's findings of fact are reviewed under a clearly erroneous standard of review, questions of law are subject to plenary review." (Internal quotation marks omitted.) *Harris* v. *Commissioner of Correction,* supra, 271 Conn. 817. Because the material facts are not in dispute and the issues before us present questions of law, our review is plenary. See id. With this standard in mind, we turn to the petitioner's claims on appeal.

I

The petitioner first claims that he was deprived of his constitutional right to due process because the state

failed to honor its plea agreement with him. Specifically, the petitioner argues that he was induced to plead guilty by the state's promises that he would serve a total of fifteen years on both dockets and that the respondent, by not giving him credit for presentence confinement, has calculated his discharge date so as to hold him beyond that agreed on fifteen year term. The habeas court deemed the petitioner's claim abandoned because the petitioner failed to present any evidence in support of his position. Having reviewed the record, including the transcripts of the plea and sentencing hearings, we agree with the court that the record is devoid of any evidence of an agreement between the petitioner and the state regarding presentence confinement credit. Accordingly, this claim fails.

## II

The petitioner next claims that his constitutional right to equal protection was violated. The petitioner's claim in this regard is threefold. The petitioner claims that he was denied equal protection because (1) his inability to post bond caused him to serve more time than someone who had the ability to post bond, (2) the respondent's method of applying presentence confinement credit treats persons sentenced to concurrent terms on the same date differently from those persons sentenced to concurrent terms on different dates and (3) the respondent's policy regarding the application of presentence confinement credits was not applied uniformly to all similarly situated inmates. We disagree.

The petitioner's first two equal protection claims were rejected by our Supreme court in *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 831–41. In analyzing those claims, the court determined that "because [presentence confinement] credit is not constitutionally mandated, it is not one of those few rights deemed so fundamental that the state cannot impinge

upon it in the absence of a compelling reason." (Internal quotation marks omitted.) Id., 833. The court went on to conclude that prisoners do not constitute a suspect class and that the "respondent's method of crediting presentence confinement days when concurrent sentences are imposed on different dates serves the legitimate public purpose of ensuring that a convicted offender serves the full term of each criminal sentence imposed." Id., 834. Following the analysis applied in *Harris*, we address the petitioner's remaining equal protection claim.

The petitioner contends that the respondent's policy regarding the application of presentence confinement credits, as it was changed in the wake of *Harris*, was not applied uniformly to all similarly situated inmates in that recalculations of presentence confinement credits were not done for all prisoners who were discharged from their sentences after the November 30, 2004 release date of that decision. The petitioner asserts that because there were inmates to whose sentences *Harris* applied, who were discharged after the November 30, 2004 release of *Harris*, but before the respondent implemented the new policy, the policy was not applied uniformly, and, therefore, his right to equal protection was violated.

At trial, Deveau testified that, as a result of *Harris*, the respondent had to change the jail credit policy, train counselors and records specialists and notify housing units and prison officials before they could actually begin implementing the new policy and recalculating the sentences. Deveau testified that that process took some time and that the respondent began reviewing sentences at the end of December, 2004. The petitioner was not singled out in this regard, and the respondent had reviewed the records of more than 5800 inmates as of the time of trial.

The habeas court concluded that the respondent has a statutory duty to correctly calculate and apply presentence confinement credits and that the correction of an error in the application of those credits is clearly a legitimate purpose. Because "[t]he equal protection clause does not require absolute equality or precisely equal advantages"; (internal quotation marks omitted) id., 834; we conclude that the fact that the respondent did not reincarcerate those inmates that were released before the recalculation policy was implemented did not constitute a violation of the petitioner's constitutional right to equal protection.

The petitioner next claims that the removal of his presentence confinement credit from one sentence and the application of that credit to another sentence was an ex post facto violation in that he assumed that his presentence credit would shorten his fifteen year sentence, and the implementation of the new policy made it so that he was not receiving the benefit of that time. We are unpersuaded.

"The ex post facto prohibition forbids the Congress and the States to enact any law [that] imposes a punishment for an act [that] was not punishable at the time [that] it was committed; or imposes additional punishment to that then prescribed. . . . To fall within the ex post facto prohibition, a law must be retrospective—that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it . . . by altering the definition of criminal conduct or increasing the punishment for the crime . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 195, 842 A.2d 567 (2004).

Here, the petitioner's presentence confinement credits were applied to his initial sentence, which happened to be his shorter sentence, and his total effective sentence was, therefore, not shortened. However, the petitioner did not receive an increased punishment as a

result of the respondent's recalculation of his presentence confinement credits, nor did the recalculation result in a more severe punishment than the law in effect on the date of the underlying offenses warranted. Thus, the petitioner's ex post facto claim is without merit.

The petitioner finally claims that the respondent violated the separation of powers doctrine. "[T]he primary purpose of [the separation of powers] doctrine is to prevent commingling of different powers of government in the same hands. . . . The constitution achieves this purpose by prescribing limitations and duties for each branch that are essential to each branch's independence and performance of assigned powers. . . . It is axiomatic that no branch of government organized under a constitution may exercise any power that is not explicitly bestowed by that constitution or that is not essential to the exercise thereof. . . . [Thus] [t]he separation of powers doctrine serves a dual function: it limits the exercise of power within each branch, yet ensures the independent exercise of that power. . . . Nevertheless, we are mindful that the branches of government frequently overlap, and . . . the doctrine of the separation of powers cannot be applied rigidly . . . ." (Citation omitted; internal quotation marks omitted.) *Whitaker* v. *Commissioner of Correction*, 90 Conn. App. 460, 480–82, 878 A.2d 321, cert. denied, 276 Conn. 918, 888 A.2d 89 (2005).

In the present case, the respondent, an agent of the executive branch, implemented a policy in accordance with the judiciary's interpretation of a statute promulgated by the legislature. Because the petitioner has failed to demonstrate any improper commingling of governmental powers, his claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.