******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GANESH BHARRAT *v.* COMMISSIONER
OF CORRECTION
(AC 37261)

Alvord, Prescott and Bear, Js.

*Argued March 1—officially released July 26, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Fuger, J.)

*Douglas H. Butler*, assigned counsel, for the appellant (petitioner).

*Megan L. Wade*, certified legal intern, with whom were *Harry Weller*, senior assistant state's attorney, and, on the brief, *Gail P. Hardy*, state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

PRESCOTT, J. The petitioner, Ganesh Bharrat, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court abused its discretion by denying his petition for certification to appeal and by rejecting his claims that his trial counsel provided ineffective assistance of counsel. Having thoroughly reviewed the record, we conclude that the habeas court properly denied the petition for certification to appeal, and, accordingly, we dismiss the appeal.

The following facts, as set forth by this court in the petitioner's direct appeal or found by the habeas court, and procedural history are relevant to this appeal. "[O]n December 24, 2005, the [petitioner] met the victim, Jose Morales, in a bar. After conversing with the victim, the [petitioner] accompanied the victim to the victim's apartment in Hartford. Later that evening, after the victim had fallen asleep, the [petitioner] entered the victim's bedroom and stabbed the victim numerous times with a knife, thereby causing his death. The [petitioner] left the victim's apartment with the keys to the victim's automobile as well as the victim's wallet and cellular telephone. The [petitioner] drove away from the scene in the victim's automobile, later renting the automobile to Henry Garcia. The [petitioner] used the victim's cellular telephone and, later, stashed the victim's wallet and house keys in the apartment where he had been living at the time of the crimes. Later, police discovered the murder weapon and the bloodstained clothing worn by the [petitioner] at the time of the murder, both of which contained the victim's genetic material, in the [petitioner's] apartment. By means of statements that the [petitioner] made to the police, he fully implicated himself in the victim's murder. Referring to the victim's death, the [petitioner] stated to the police, 'He got what he deserved. I did what I had to do.' " *State* v. *Bharrat*, 129 Conn. App. 1, 3–4, 20 A.3d 9, cert. denied, 302 Conn. 905, 23 A.3d 1243 (2011).

Following a jury trial, the petitioner was found guilty of murder in violation of General Statutes § 53a-54a, felony murder in violation of General Statutes § 53a-54c, burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), and larceny in the third degree in violation of General Statutes § 53a-124 (a) (1). The trial court merged the petitioner's sentence for his felony murder conviction with his sentence for his murder conviction, and sentenced the petitioner to a total effective term of fifty-five years imprisonment.

The petitioner appealed to this court from the judgment of conviction. He claimed on direct appeal "(1) that the trial court improperly failed to deliver an

instruction on the defense of diminished capacity; (2) that the court's instruction concerning evidence of intoxication, as it related to the crime of murder, was deficient; (3) that the evidence was insufficient to prove that he committed felony murder; and (4) that the court improperly expanded the offense of felony murder." Id., 3. This court affirmed the judgment of conviction. In doing so, we specifically concluded, among other things, that the trial court properly declined to instruct the jury on the defense of diminished capacity because the petitioner's trial counsel failed to offer any evidence from which the jury could infer that the petitioner was incapable of forming the requisite intent to kill the victim on the ground of diminished capacity. Id., 12–16. We also concluded that the petitioner waived his claim that the court improperly expanded the offense of felony murder, because the petitioner's trial counsel had failed to take an exception to that portion of the jury instruction. Id., 35.

Subsequently, on May 14, 2013, the petitioner filed an amended petition for a writ of habeas corpus, alleging ineffective assistance of trial counsel. The petitioner alleged that the performance of his trial counsel, Michael J. Isko,[1] was deficient because he failed to present expert psychiatric evidence at trial to establish a diminished capacity defense, and because he failed to object to the trial court's jury instructions regarding whether the burglary offense, which was the predicate felony for the felony murder offense, could itself be based on an intent to commit assault or an intent to commit larceny. On June 9, 2014, the habeas court, *Fuger*, *J.*, held a trial in which it heard testimony from Isko and Radhika Mehendru, a psychiatrist at the Institute of Living, who had evaluated the petitioner days prior to the commission of the crimes.

After trial, the habeas court denied the petition for a writ of habeas corpus. The court concluded that Isko's failure to offer expert testimony concerning the diminished capacity defense was not deficient performance and did not prejudice the petitioner. The habeas court further concluded that the petitioner had abandoned his claim that Isko's failure to object to the jury instructions was ineffective assistance, and, even if this claim was not abandoned, the petitioner had failed to establish prejudice. The petitioner filed a petition for certification to appeal from the judgment of the habeas court, which the habeas court denied. This appeal followed. Additional facts will be set forth as necessary.

As an initial matter, we set forth the applicable standard of review and principles of law. "In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes

that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), [our Supreme Court] incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Emphasis in original; internal quotation marks omitted.) *Taft* v. *Commissioner of Correction*, 159 Conn. App. 537, 543–44, 124 A.3d 1, cert. denied, 320 Conn. 910, 128 A.3d 954 (2015).

"To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment [to the United States constitution]. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Citations omitted; internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712–13, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland* v. *Washington*, supra, 697.

"The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . [T]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal

standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012).

I

The petitioner first claims that the habeas court abused its discretion by denying his petition for certification to appeal because it is debatable amongst jurists of reason that Isko's failure to offer expert testimony regarding a diminished capacity defense constituted deficient performance. Specifically, the petitioner contends that had expert testimony been offered regarding the mental disorder from which he allegedly suffered at the time of the commission of the crimes, the trial court would have instructed the jury on his diminished capacity defense. The respondent, the Commissioner of Correction, contends that the habeas court properly concluded that Isko's performance was not deficient because his decision not to offer testimony from an expert witness concerning a diminished capacity defense was a reasonable, strategic decision. We agree with the respondent.

The following additional facts and procedural history are relevant to this claim. During the underlying criminal trial, Isko did not offer testimony from an expert witness concerning the petitioner's mental health at the time of the commission of the crimes. Rather, Isko attempted to establish through lay witnesses that the petitioner had diminished capacity, and, thus, was incapable of forming the requisite intent to commit murder. To effectuate this strategy, Isko cross-examined Sergeant Timothy Shaw of the Hartford Police Department, who testified that the petitioner had claimed to suffer from bipolar disorder. Specifically, the petitioner had told Shaw that he heard voices and that drinking water felt like he was drinking blood. Isko also offered the testimony of Annette Deonarine, a woman with whom the petitioner claimed to be in a romantic relationship. Deonarine testified at trial that not only had she never been in a romantic relationship with the petitioner, but that he was obsessed with her and was delusional, as evidenced by his belief that he was in a romantic relationship with her. After the petitioner rested his case, Isko requested that the jury be instructed on diminished capacity. The court declined to instruct the jury on diminished capacity, concluding that there was no evidence to support such an instruction.

The habeas court determined that the petitioner had alleged that Isko "was ineffective because he failed to produce expert psychiatric evidence at trial to support a jury instruction of diminished mental capacity in order to support a jury instruction that his diminished mental capacity precluded him from forming the requisite specific intent to commit [murder]. In support of this claim,

the petitioner presented [testimony from Mehendru and Isko] . . . .

"According to [Mehendru], she evaluated the petitioner on December 14 and 19, 2005, merely days prior to the offense date of December 24, 2005. The petitioner, at the time she evaluated him, suffered from substance induced mood disorder and antisocial personality disorder. [Mehendru] testified that someone with these disorders nevertheless wilfully decides to break the law. Although the petitioner reported hearing voices, he was able to isolate his inner world from the real world. Similarly, he reported hallucinatory images, but he had no problems dealing with them. The petitioner did not lose touch with reality even though he had a psychotic symptom. The psychosis experienced by the petitioner was not a primary feature or diagnosis. [Mehendru] further noted that although the petitioner had difficulties with impulsivity, she found his impulse control to be adequate. The petitioner had made a suicide attempt before and had suicidal ideations; however, he never mentioned homicidal ideations. [Mehendru] also noted that there were many inconsistencies in what the petitioner self-reported and that she suspected that he was malingering. On cross-examination, [Mehendru] described the petitioner as manipulative and demanding, and as someone who would push the limits of what he could get away with. The petitioner, according to [Mehendru], knew right from wrong and chose to break the law.

"The only other witness to present testimony about asserting a diminished mental capacity defense was [Isko]. According to [Isko], the defense team evaluated whether a defense of mental disease or defect was a viable defense. To that end, the defense team consulted with an expert at Yale University, but that expert concluded that the petitioner's psychosis was drug induced and, therefore, not a viable basis for a defense of mental disease or defect [pursuant to General Statutes § 53a-13 (b)].[2] Similarly, a personality disorder also would not support such a defense. . . . Isko further testified that the defense team, which had the petitioner's records from the Institute of Living, looked at whether there was a diminished mental capacity to form intent. The petitioner's behavior was drug driven, and his use of drugs precluded diminished mental capacity from being a viable defense." (Footnotes altered.)

On the basis of this testimony, the habeas court concluded that "the petitioner here has failed to present any evidence that diminished mental capacity was a viable and meritorious defense. Counsel investigated and considered both mental disease and diminished mental capacity defenses. These defenses, however, were unsupported. The court concludes that the petitioner has failed to prove that trial counsel rendered deficient performance. Additionally, none of the evi-

dence presented in the habeas proceeding in any way undermines this court's confidence in the outcome of the jury trial, which is necessary to prove the *Strickland* prejudice prong."

With this factual and procedural history in mind, we turn to the legal principles that guide our analysis. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . Judicial scrutiny of counsel's performance must be highly deferential and courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citation omitted; internal quotation marks omitted.) *Veal* v. *Warden*, 28 Conn. App. 425, 434, 611 A.2d 911, cert. denied, 224 Conn. 902, 615 A.2d 1046 (1992). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; [but] strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." (Internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, 319 Conn. 623, 632–33, 126 A.3d 558 (2015).

In deciding whether defense counsel's decision to pursue a diminished capacity defense without expert testimony was a reasonable strategic decision, the following legal principles are relevant. "To establish a violation of § 53a-54a,[3] the crime of murder, the state must prove beyond a reasonable doubt that the defendant, with intent to cause the death of another person . . . cause[d] the death of such person or of a third person . . . . [T]he specific intent to kill is an essential element of the crime of murder. To act intentionally, the defendant must have had the conscious objective to cause the death of the victim." (Citation omitted; footnote added; internal quotation marks omitted.) *State* v. *Aviles*, 107 Conn. App. 209, 217, 944 A.2d 994, cert. denied, 287 Conn. 922, 951 A.2d 570 (2008). "[T]he inability to control one's conduct within the requirements of the law that is not induced by voluntary intoxication is an affirmative defense [to murder pursuant to § 53a-13]." *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 162, 662 A.2d 718 (1995).

"If [a] defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction. . . . The defendant's right to such an instruction is founded on the principles of due process. . . . Before an instruction is warranted, however, [a] defendant bears the initial burden of producing suffi-

cient evidence to inject [the defense] into the case. . . . Conversely, the court has a duty not to submit to the jury, in its charge, any issue upon which the evidence would not reasonably support a finding." (Citation omitted; internal quotation marks omitted.) *State* v. *Lynch*, 287 Conn. 464, 470–71, 948 A.2d 1026 (2008). "To warrant consideration of diminished capacity . . . the defendant must have presented evidence which might have raised a reasonable doubt as to the existence of the specified mental state." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Pagano*, 23 Conn. App. 447, 450, 581 A.2d 1058, cert. denied, 217 Conn. 802, 583 A.2d 132 (1990).

In a related context, this court has previously considered whether it is deficient performance for trial counsel to not offer the testimony of an expert witness in order to establish the defense of extreme emotional disturbance. In *Veal* v. *Warden*, supra, 28 Conn. App. 434, the petitioner's trial counsel failed to call an expert witness at the underlying criminal trial. Id. At the habeas trial in *Veal*, the petitioner's trial counsel testified that he had consulted two psychiatrists, who both found that there was no clinical basis to support the defense of extreme emotional disturbance. Id. On the basis of this testimony, the habeas court held, and this court agreed, that trial counsel's decision did not constitute deficient performance because it was a reasonable strategic decision that was made after thorough investigation. Id.

In the present case, Isko similarly thoroughly investigated a diminished capacity defense. He consulted with an expert at Yale University, read the petitioner's medical records from the Institute of Living, and spoke to lay witnesses concerning the petitioner's mental health. After this thorough investigation, Isko made a strategic decision not to call an expert witness at trial. The testimony of Mehendru establishes that this strategic decision was reasonable because, even if an expert had testified, such testimony likely would have established that the petitioner's mental health issues were caused by voluntary intoxication, and, thus, could not be a basis for establishing diminished capacity. Additionally, expert testimony, if offered, likely would have tended to show that near the time of the commission of the crime, the petitioner had adequate impulse control and wilfully decided to break the law, and, thus, was capable of forming the requisite intent to commit murder.

In sum, Isko conducted a thorough investigation into the petitioner's mental health and, on the basis of that investigation, made the reasonable, strategic decision not to call an expert witness at the underlying criminal trial. Accordingly, the habeas court did not abuse its discretion by denying the petition for certification to appeal because it is not debatable amongst jurists of reason whether it was deficient performance for Isko

to make the reasonable, strategic decision to not offer expert testimony regarding diminished capacity.

## II

The petitioner next claims that the habeas court abused its discretion by denying his petition for certification to appeal because (1) he did not abandon his claim that Isko provided ineffective assistance by failing to object to the jury instruction on felony murder, and (2) it is debatable amongst jurists of reason whether he was prejudiced by Isko's failure to object to the jury instructions and the state's closing argument regarding the intent element of felony murder, and by his failure to poll the jury regarding the intent element of felony murder. Specifically, the petitioner contends that, on the basis of a prior ruling at a probable cause hearing, the jury should have been instructed that it could find him guilty of felony murder only if it determined that he had committed the murder in the course of a burglary with the intent to commit larceny in the sixth degree, and that it could not rely upon the alleged assault as a predicate for the felony murder charge. Thus, according to the petitioner, Isko's performance was deficient, and he was prejudiced by Isko's actions because, had the court properly instructed the jury, the jury would have acquitted him of the felony murder charge on the ground that there was insufficient evidence to support a finding that he had the intent to commit a larceny.

The respondent argues that the petitioner abandoned this claim at the habeas trial because he offered no evidence regarding this claim. Alternatively, the respondent contends that the petitioner failed to establish that he was prejudiced by Isko's failure to object to the jury instruction and the state's closing argument regarding felony murder because it is unclear from the record whether the jury found the petitioner guilty of felony murder based upon a subordinate conclusion that he had committed a burglary with the underlying intent to commit an assault, or the underlying intent to commit a larceny. Additionally, the respondent argues, in response to the petitioner's claim that he was prejudiced, that there was sufficient evidence for the jury reasonably to find that the petitioner had the intent to commit larceny in the sixth degree. Although we agree with the petitioner that he did not abandon this claim, we decline to review his argument that he was prejudiced by Isko's actions because his argument on appeal was not raised before the habeas court.[4]

The following additional facts, as found by the habeas court, are relevant to this claim. "[T]he court, *Sheldon, J.*, held a probable cause hearing during which time the state requested a finding of probable cause for the crimes of murder and felony murder. At the conclusion of the hearing, the prosecutor argued that there was probable cause to find that the [petitioner] had killed the victim in the course of or furtherance of committing

a burglary [in the first degree, and, thus, committed felony murder].[5] Concerning the burglary [in the first degree],[6] the prosecutor [alleged] that the [petitioner] had remained unlawfully in the [victim's] residence while intending to commit an assault [in the third degree][7] therein. The court expressed its belief that, as a matter of law, it was improper for the burglary underlying the felony murder count to be based upon an intent to commit an assault. . . . Judge Sheldon found probable cause with respect to felony murder premised on a burglary by entering with the intent to commit the crime of larceny [in the sixth degree],[8] but did not find probable cause as to felony murder premised on a burglary with the intent to commit an assault. . . .

"[T]he state charged the [petitioner] with having committed felony murder by causing the victim's death in the course of and in furtherance of the crime of burglary. Just prior to closing arguments, the court, *Mullarkey*, *J.*, discussed the content of its charge. The court referred to the fact that it had held charge conferences with counsel that were not on the record. The court referred to several topics that it had discussed with counsel during those conferences, stating in relevant part: I asked the state particularly . . . what crimes it claimed were the underlying crimes of burglary, which is an issue in both the burglary [in the first degree] count and the felony murder count. . . . [The] state indicated at that time that [it was] requesting larceny [in the] sixth [degree] and assault [in the] third [degree] as the specific crimes intended by the defendant for [the] claim underlying the concept of burglary. Thereafter, the court noted that it had given counsel copies of its jury charge, noting that it wanted counsel to have as much time as necessary to review the charge thoroughly. . . . After referring to these various matters discussed at the charge conference, the court asked, [d]oes anybody have any . . . summation, disagreements, additions, subtractions from my summary of the charge conference? At that time, [Isko] objected to the court's refusal to deliver an instruction regarding diminished capacity, but did not raise any other concerns or objections to the matters specifically discussed by the court, including the state's requested instruction. After a recess, the court asked counsel if they were ready to proceed, and, following an affirmative reply by defense counsel, it proceeded to closing arguments. . . .

"[T]he prosecutor argued to the jury that, for purposes of the felony murder count, the [petitioner] could be found to have committed burglary if he unlawfully remained in the victim's residence while intending to assault the victim or intending to steal from the victim. Although the state clearly referred to the mental state for the crimes of assault in the third degree and larceny in the sixth degree, the crimes referred to by the court in discussing the content of its charging conferences,

the [petitioner] did not object to this argument at any time.

"Later, the court instructed the jury that, for purposes of the felony murder count, the [petitioner] could be found to have committed burglary if he unlawfully remained in the victim's residence intending to commit either assault in the third degree or larceny in the sixth degree. At no time did the [petitioner] object to the court's instruction." (Citations omitted; footnotes added; internal quotation marks omitted.)

On direct appeal of his conviction to this court, the petitioner claimed that the trial court failed to instruct the jury properly regarding the elements of felony murder, as limited by Judge Sheldon's probable cause determination. *State* v. *Bharrat*, supra, 129 Conn. App. 29–32. Specifically, he argued that because the court during the probable cause hearing ruled that there was not probable cause to charge the petitioner with felony murder predicated on a burglary with an underlying intent to commit an assault, the jury instructions on felony murder should have directed the jury that it could find the petitioner guilty only if it found that the state proved beyond a reasonable doubt that the burglary was committed with an underlying intent to commit a larceny. Id., 32–34. Additionally, in support of his claim that he was prejudiced by his counsel's failure to object to this instructional error, the petitioner claimed that there was insufficient evidence to support a finding that he had the requisite intent to commit larceny in the sixth degree. Id., 27.

As to the claim regarding the jury instruction, we held on direct appeal that such a claim was waived because the petitioner did not take exception to the jury instruction concerning the intent element of felony murder. Id., 35. As to the sufficiency of the evidence claim, on direct appeal we did not reach the merits of the claim, but rather held that even if there was insufficient evidence to find that the petitioner had the requisite intent to commit larceny in the sixth degree as the predicate intent to burglary in the first degree, there was an alternative ground—intent to commit assault in the third degree—upon which the jury could have found that the petitioner committed burglary in the first degree as a predicate for felony murder. Id., 28.

Subsequently, in his amended petition for a writ of habeas corpus and his pretrial memorandum of law, the petitioner "allege[d] that counsel was deficient for failing to object at the charge conference to the proposed felony murder instructions, as well as failing to object to the state's closing arguments. The petitioner also allege[d] that counsel was deficient for failing to ask the court to inquire of the jury as to whether [it] found the predicate burglary to be based on the intent to commit an assault, or whether the burglary was based on the intent to commit a larceny. If the jury found it

to be based on an assault, counsel would further be deficient for failing to move for a directed verdict of not guilty on the charge of felony murder, since there was no probable cause to charge the petitioner with felony murder based on a predicate crime of burglary with the intent to commit an assault in the burgled premises." (Internal quotation marks omitted.) The petitioner did not argue to the habeas court that if the jury had found him guilty of felony murder on the basis of a predicate crime of burglary with an intent to commit a larceny, there was insufficient evidence to support such a finding of intent.

At the habeas trial, Isko testified that he did not object to the jury instruction on felony murder. Isko stated that he believed, but could not recall, that the petitioner was convicted of felony murder predicated on a burglary predicated on an intent to commit a larceny. Because of this belief, Isko did not request that the court poll the jury.

After Isko's testimony, the petitioner rested, and the respondent offered no additional witnesses. In closing argument, the petitioner rested on his pretrial brief. The respondent argued in regard to this claim that the petitioner was not prejudiced by Isko's failure to object to the jury charge and the state's closing argument concerning felony murder because "it's . . . obvious that according to [Isko] and . . . the transcript, that the felony murder was based on the items taken from the home after the murder [i.e., intent to commit a larceny]."

In its memorandum of decision, the habeas court deemed this claim abandoned: "At the habeas trial, the petitioner did not present any evidence in support of these allegations. [Although Isko testified that he did not object to the jury instruction on this issue, Isko was never questioned regarding his reason for not objecting, and, thus, no evidence was offered from which the court could infer whether Isko's failure to object was a reasonable, strategic decision.] The court, therefore, deems them to have been abandoned. . . . However, even [if] this court were to not consider these claims to have been abandoned and that trial counsel were presumed to have rendered deficient performance as alleged, the petitioner's claims would fail on the prejudice prong.

"Judge Sheldon found probable cause [to believe] that the petitioner committed murder on the theory of felony murder, in that he committed a burglary by entering with the intent to commit a crime of larceny by theft of items [i.e., the keys to the victim's car and the car itself] belonging to [the victim]. . . . The jury was informed of the charges at the onset of trial. The third count charged the petitioner with burglary in the first degree for [being] armed with a dangerous instrument, to wit, a knife, remained unlawfully in [the vic-

tim's] building with the intent to commit a crime therein. . . . The fourth count charged the petitioner with larceny in the third degree for having the intent to deprive [the victim] of property, a 1993 Mitsubishi automobile . . . [and] wrongfully [taking and obtaining] said automobile from its owner and such . . . vehicle's value was less than $5000. . . .

"The jury convicted the petitioner on all four counts as charged: murder, felony murder, burglary in the first degree, and larceny in the third degree. Thus, the jury intrinsically and necessarily found the petitioner guilty of the underlying crimes for the felony murder charge for which Judge Sheldon found probable cause, i.e., felony murder premised on a burglary and the intent to commit a larceny.

"Based upon the foregoing, [the habeas court concluded] that the petitioner has failed to show how he was prejudiced by counsel's failure to seasonably object to the felony murder instructions and to the state's closing arguments, as well as for failing to ask the court to inquire of the jury as to whether [it] found the predicate burglary to be based on the intent to commit an assault, or whether the burglary was based on the intent to commit a larceny." (Citations omitted; emphasis omitted; internal quotation marks omitted.)

A

We first address whether the petitioner abandoned this claim at the habeas trial. Our standard of review of a habeas court's finding that a claim has been abandoned is plenary. *Solek* v. *Commissioner of Correction*, 107 Conn. App. 473, 479, 946 A.2d 239, cert. denied, 289 Conn. 902, 957 A.2d 873 (2008). There is a distinction between abandoning a claim and failing on the merits of a claim. A claim may be deemed abandoned in cases in which a claim is not addressed during trial. See *Crocker* v. *Commissioner of Correction*, 126 Conn. App. 110, 132, 10 A.3d 1079 (upholding habeas court's conclusion that "petitioner had abandoned [a] claim because [1] it was not addressed in his posttrial brief and [2] he failed to adduce evidence in support of the claim during the habeas trial"), cert. denied, 300 Conn. 919, 14 A.3d 333 (2011); *Wooten* v. *Commissioner of Correction*, 104 Conn. App. 793, 801, 936 A.2d 263 (2007) (claim deemed "abandoned because the petitioner failed to present any evidence in support of his position"), cert. denied, 289 Conn. 911, 957 A.2d 868 (2008). If evidence and argument have been offered concerning a claim, however, but the evidence is not sufficient to establish an element of the claim, the claim fails on the merits. See *Davey B.* v. *Commissioner of Correction*, 114 Conn. App. 871, 876, 971 A.2d 735 (2009) (to succeed on merits of ineffective assistance of counsel claim pursuant to *Strickland*, petitioner must establish that counsel's actions did not constitute sound trial strategy).

Whether the petitioner abandoned this claim by failing to present it to the habeas court is a close question. With respect to Isko's failure to object to the jury instruction on felony murder, the petitioner argued both deficient performance and prejudice in his petition for a writ of habeas corpus and in his pretrial memorandum of law, which he relied on in lieu of making a closing argument. Additionally, the petitioner questioned Isko regarding whether he objected to the jury instruction on felony murder, and why he did not seek to poll the jury. The petitioner, however, did not question Isko as to why he did not object to the jury instruction on felony murder. For the purposes of this appeal, we assume that the petitioner did not abandon this claim, without deciding whether, as the habeas court concluded, a party abandons a claim of ineffective assistance of counsel in a case if trial counsel is not questioned at the habeas trial concerning the reasons behind his or her strategic decisions. Rather than treating this claim as abandoned, we conclude that it is appropriate to address it because the habeas court reached the merits of the claim, and both parties fully have briefed it on appeal. Accordingly, there is no prejudice or surprise to either the habeas court or the parties by this court in addressing the merits of the claim.

B

Next, we turn to the habeas court's alternative ground for concluding that the petitioner had not established ineffective assistance of counsel concerning Isko's failure to object to the jury instruction on felony murder. The habeas court found, in the alternative, that the petitioner failed to establish that he was prejudiced by Isko's failure (1) to object to the jury instruction and the state's closing argument regarding felony murder predicated on an intent to commit an assault, or (2) to request that the jury be polled. According to the habeas court, the petitioner was not prejudiced by Isko's actions because it concluded that there was sufficient evidence to support the petitioner's felony murder conviction because he had committed a burglary with the underlying intent to commit a larceny. On appeal, the petitioner argues that the habeas court abused its discretion by denying his petition for certification to appeal because it is debatable amongst jurists of reason that he was prejudiced by Isko's actions. Specifically, he contends that he was prejudiced because if the jury had been instructed that the felony murder charge could be predicated only upon the intent to commit larceny, it would have acquitted him of the felony murder charge. He would have been acquitted of this charge, according to the petitioner, because there was insufficient evidence to establish that he had the intent to commit a larceny at the time he stabbed the victim. The petitioner, however, argued in the habeas court only that if the jury had found him guilty of felony

murder on the ground that he killed the victim in the course of committing a burglary with the intent to commit an assault, he was entitled to an acquittal of the charge of felony murder. Because the argument that the petitioner asserts on appeal was never made to the habeas court, it is unpreserved, and we decline to review it.

"Our law is well settled that a party may not try its case on one theory and appeal on another." (Internal quotation marks omitted.) *Janusauskas* v. *Fichman*, 264 Conn. 796, 807, 826 A.2d 1066 (2003); *Rodriguez* v. *State*, 155 Conn. App. 462, 471 n.10, 110 A.3d 467, cert. granted on other grounds, 316 Conn. 916, 113 A.3d 71 (2015). Arguments asserted in support of a claim for the first time on appeal are not preserved. See *State* v. *Jeffreys*, 78 Conn. App. 659, 666–67, 828 A.2d 659 (if argument in support of claim is different on appeal, argument is not preserved and only reviewable if argument meets requirements of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 [1989]), cert. denied, 266 Conn. 913, 866 A.2d 465 (2003), overruled in part on other grounds by *State* v. *Polanco*, 308 Conn. 242, 248, 253, 61 A.3d 1084 (2013). Our Supreme Court has stated that "shift[s] in arguments [on appeal are] troubling because, as [the court] previously ha[s] noted, to review . . . claim[s] . . . articulated for the first time on appeal and not [raised] before the trial court, would [be nothing more than] a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Neuhaus* v. *DeCholnoky*, 280 Conn. 190, 216 n.18, 905 A.2d 1135 (2006).

At the habeas trial, the petitioner never made an insufficiency of the evidence argument in regard to the jury's finding that he had the requisite intent to commit a larceny as the predicate intent to burglary and felony murder. The petitioner made no argument regarding whether he would be entitled to an acquittal on the charge of felony murder if the jury had found him guilty of felony murder on the ground that he killed the victim in the course of committing a burglary with the underlying intent to commit a larceny.

Because the petitioner did not make this argument to the habeas court, the habeas court made no determination as to whether there was sufficient evidence to support a finding that he killed the victim in the course of committing a burglary with the intent to commit a larceny. The habeas court never was placed on notice that a sufficiency of the evidence argument existed. Accordingly, because this argument was never raised in the habeas court, we conclude that it is unpreserved and decline to review it.[9]

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The habeas court noted that "the amended petition [for a writ of habeas corpus] allege[d] ineffective assistance only by . . . Isko, but the petitioner was also represented by Attorney Bruce Lorenzen. While . . . Isko may

have been lead counsel . . . Lorenzen nevertheless was cocounsel and conducted cross-examination of some witnesses. Because no allegations are directed at Lorenzen, who did not testify at the habeas trial, the court limits its discussion of any purported deficiencies to . . . Isko. Nevertheless, because the petitioner's legal claim is ineffective assistance by trial counsel, the court explicitly finds that the petitioner has waived any claims against . . . Lorenzen by not raising them in the present matter." The petitioner does not challenge this aspect of the habeas court's decision.

[2] General Statutes § 53a-13 provides in relevant part: "(a) In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law.

"(b) It shall not be a defense under this section if such mental disease or defect was proximately caused by the voluntary ingestion, inhalation or injection of intoxicating liquor or any drug or substance, or any combination thereof, unless such drug was prescribed for the defendant by a prescribing practitioner, as defined in subdivision (22) of section 20-571, and was used in accordance with the directions of such prescription. . . ."

[3] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[4] Prior to oral argument before this court, we requested the parties to be prepared to address the issue of mootness regarding this claim. Specifically, we inquired as to whether the petitioner's attack on his conviction of felony murder would be moot if he is unsuccessful in this appeal in obtaining relief regarding his conviction of murder because, even if he is successful in his attack on his conviction of felony murder, he still would be obligated to serve a fifty-five year sentence on the basis of his murder conviction alone. We conclude that this claim is not moot.

A claim is moot if there is no practical relief that this court can afford the complainant. *State* v. *Preston*, 286 Conn. 367, 374, 944 A.2d 276 (2008). A claim is not moot if this court can afford practical relief from the collateral consequences of a conviction. *Barlow* v. *Lopes*, 201 Conn. 103, 112–13, 513 A.2d 132 (1986) ("[t]he collateral consequences of a conviction are legion: subsequent convictions might, as a result, carry heavier penalties and a wide range of civil rights might be affected").

In deciding whether this claim is moot, we first must review the distinction between merged convictions and vacated convictions. Subsequent to the petitioner's sentencing in the underlying criminal trial, our Supreme Court held that "when a defendant has been convicted of greater and lesser included offenses, the trial court must vacate the conviction for the lesser offense rather than merging the convictions . . . ." *State* v. *Polanco*, 308 Conn. 242, 245, 61 A.3d 1084 (2013). Prior to *Polanco*, our Supreme Court had adopted the merger of convictions approach, in which the sentences for the greater and lesser included offenses were merged but both convictions remained on a defendant's criminal record. Id., 252. In *Polanco*, our Supreme Court held that the lesser included offense should be vacated, not merged, and, thus, the lesser included offense would not remain on a defendant's criminal record. Id. Accordingly, if the petitioner had been sentenced after our Supreme Court's decision in *Polanco*, his felony murder conviction would have been vacated, not merged.

Here, the petitioner's sentences for his murder and felony murder convictions were merged. Thus, the petitioner's criminal record reflects both convictions, and there is practical relief that this court can afford the petitioner should he prevail on his second claim—namely, he would be entitled to have the felony murder conviction expunged from his criminal record. Accordingly, this claim is not moot. See *State* v. *Carter*, 320 Conn. 564, 565 n.2, 132 A.3d 729 (2016) ("the defendant's appeal of the lesser sentence is not rendered moot simply because we cannot afford him relief in terms of the length of his sentence").

[5] General Statutes (Supp. 2016) § 53a-54c defines felony murder in relevant part: "A person is guilty of [felony] murder when, acting either alone or with one or more persons, such person commits . . . burglary . . . and, in the course of and in furtherance of such crime . . . such person . . . causes the death of a person other than one of the participants . . . ."

We note that § 53a-54c was amended in 2015; see Public Acts 2015, No. 15-211, § 3; however, the amendment is not relevant to this appeal. For convenience, we refer herein to the revision codified in the 2016 supplement to the General Statutes.

[6] General Statutes § 53a-101 (a) defines burglary in the first degree in

relevant part: "[A] person is guilty of burglary in the first degree when (1) such person enters or remains unlawfully in a building with intent to commit a crime therein and is armed with . . . a . . . dangerous instrument . . . ."

[7] General Statutes § 53a-61 defines assault in the third degree in relevant part: "(a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon. . . ."

[8] General Statutes § 53a-125b (a) defines larceny in the sixth degree: "A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is five hundred dollars or less."

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[9] The petitioner does not request that we review this unpreserved argument pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Even if he did, however, this argument is not reviewable pursuant to *Golding*. See *Moye* v. *Commissioner of Correction*, 316 Conn. 779, 787, 114 A.3d 925 (2015) (*Golding* review is not available for unpreserved ineffective assistance of counsel claims and is only available in habeas appeal if "[a] petitioner challenges the actions of the habeas court itself" [internal quotation marks omitted]). Accordingly, we decline to review it.